United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM WOODS, *et al.*,

        Plaintiffs,

    v.

VECTOR MARKETING CORPORATION,

        Defendant.

_____/

No. C-14-0264 EMC

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

**(Docket No. 44)**

On August 14, 2014, the Court heard argument regarding the motion to compel arbitration brought by Defendant Vector Marketing Corporation ("Vector"). For the reasons stated on the record, and as supplemented herein, the Court **GRANTS** Defendant's motion to compel arbitration.

## I.   BACKGROUND

Plaintiffs have filed a class and collective action complaint against Vector alleging violations of the Fair Labor Standards Act and various state laws. Vector seeks to compel arbitration for three of the ten individual Plaintiffs in this action, who Defendant refers to as the "Wills Plaintiffs." The arbitration clause at issue appears in the Sales Representative Agreement ("SRA") that the Wills Plaintiffs signed. The other seven individual Plaintiffs appear to have signed earlier SRAs that did not have arbitration clauses.

At some point prior to January 4, 2013, Vector revised its SRA. *Compare* Docket No. 47-1 (Saltzman Decl., Exs. 1, 2) *with* Docket No. 46 (Matheson Decl., Exs. 1, 2, 3). Vector implemented an electronic signature process and changed the terms and structure of its SRA by, *inter alia,* changing the signature line and adding an arbitration agreement. As part of the electronic signature

United States District Court

For the Northern District of California

1  process, Vector would email the trainees on the last day of training with a link to the SRA (hosted

2  by DocuSign), which the trainee could access, review, and sign electronically.  The cover email for

3  the SRA states that "[t]his electronic document provides in writing the Agreement's terms and

4  conditions that were just reviewed with you by your trainer."  Docket No. 49 (Supp. Matheson

5  Decl., Ex. A).  After electronically signing the agreement, the trainees received a confirmatory

6  email from DocuSign with a copy of the signed agreement.  *Id.,* Ex. B.

7     In their declarations, Plaintiffs Reinhart and Atwell state that they were provided the SRAs

8  by their manager / trainers on their final day of training.  *See* Docket Nos. 47-2 (Reinhart Decl.) and

9  47-3 (Atwell Decl.).  According to Plaintiffs Reinhart and Atwell, the trainers did not walk through

10 the agreements with them or explain the SRA's terms.  *Id.*  Plaintiff Kristina Wills did not submit

11 any declaration in opposition.

12    In the SRA, there is a section for the Sales Rep to fill in personal information, followed by

13 two boxes relating to taxpayer ID certification, followed by a signature line.  *See* Matheson Decl.,

14 Exs. 1, 2, 3.  Terms of the agreement begin directly under the signature line, and the first words of

15 those terms are "[i]t is agreed to by the sales representative (Sales Rep) identified above . . . ."  The

16 terms consist of 11 numbered provisions, spanning just under two printed pages.  The arbitration

17 clause appears on the second page of the printed version of the contract.  The clause specifically

18 governs disputes "related to . . . the Sales Rep's initial training" along with claims for wages and

19 compensation.  The arbitration clause requires arbitration to be conducted by JAMS, unless JAMS

20 does not have offices within 100 miles of where the agreement was signed.  The agreement

21 designates JAMS rules to apply to the conduct of the arbitration, unless AAA is selected for

22 proximity reasons.  Vector agrees to pay all costs of the arbitration aside from administrative fees

23 that the Sales Rep would have incurred by proceeding in a court of law.  *Id.* ¶ 10.  There is no

24 highlighting (*e.g.,* bolding, underlining, boxes) with respect to the arbitration clause.  Nor is there

25 any effort at diminution of the arbitration clause – the terms of the contract all appear in the same

26 font size.  The final sentence of the last provision of the SRA provides that Vector reserves the right

27 to amend the terms of the SRA upon thirty days' written notice.  There is no evidence that Vector

28 ever exercised this right.

1    Plaintiffs oppose Vector's motion arguing that (1) there was no consent to the agreement;

2  and (2) if there were an agreement, it would be unconscionable and therefore unenforceable.

3                                  **II.   DISCUSSION**

4  A.    <u>Legal Standard</u>

5    The Federal Arbitration Act (FAA) provides:

6        A written provision in any maritime transaction or a contract
         evidencing a transaction involving commerce to settle by
7        arbitration a controversy thereafter arising out of such contract
         or transaction . . . shall be valid, irrevocable, and enforceable,
8        save upon such grounds as exist at law or in equity for the
         revocation of any contract.

9

10  9 U.S.C. § 2.  The FAA reflects "both a 'liberal federal policy favoring arbitration,' and the

11  'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion,*

12  131 S. Ct. 1740, 1745-46 (2011) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr.*

13  *Corp.,* 460 U.S. 1, 24 (1983); *Rent–A–Center, West, Inc. v. Jackson,* 130 S.Ct. 2772, 2776 (2010)).

14    "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but

15  instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to

16  which an arbitration agreement has been signed.'"  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*

17  207 F.3d 1126, 1130 (9th Cir.2000) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218

18  (1985)).  Correspondingly, the court is limited to determining: "(1) whether a valid agreement to

19  arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*  If

20  there is a valid agreement to arbitrate that encompasses the dispute at issue, absent, *e.g.,*

21  unconscionability not preempted by the FAA, the FAA "requires the court to enforce the arbitration

22  agreement in accordance with its terms." *Id.*  In evaluating these questions, "federal courts must

23  'place arbitration agreement on equal footing with other contracts.'" *Samson v. NAMA Holdings,*

24  *LLC,* 637 F.3d 915, 924 (9th Cir. 2011) (quoting  *E.E.O.C. v. Waffle House,* 534 U.S. 279, 293

25  (2002)).

26    While the FAA preempts state law that disfavors arbitration, an agreement to arbitrate may

27  still be invalidated by "generally applicable contract defenses, such as fraud, duress, or

28  unconscionability." *Concepcion,* 131 S. Ct. at 1746 (citation omitted).  Such defenses arise from

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

"ordinary state-law principles," and under the relevant choice of law principles, the Court looks to the law of the state where the employee was employed.  *See Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir. 2003).

In this case, the parties do not appear to dispute that this action would fall within the scope of the arbitration clause in the SRA.  Instead Plaintiffs challenge whether there was any agreement between the Wills Plaintiffs and Defendant and whether the agreement is valid in light of principles of unconscionability.  *See* Docket No. 47 (Opp.).

B.     Existence of Agreement

The parties agree that Minnesota, Ohio, and New York laws provide the relevant principles for determining whether an agreement to arbitrate exists.  All three states follow the generally-accepted contract principle that there must be an objective "meeting of the minds" to give rise to a contract.  *See Int'l Bus. Machines Corp. v. Johnson,* 629 F. Supp. 2d 321, 330 (S.D.N.Y. 2009); *McSweeney v. Jackson,* 117 Ohio App. 3d 623, 631, 691 (1996); *Murray v. Puls,* 690 N.W.2d 337, 344 (Minn. Ct. App. 2004).  Thus, in evaluating contract formation, all three states require an objective evaluation of the words and actions of the parties.  *See Brown Bros. Elec. Contractors, Inc. v. Beam Const. Corp.,* 41 N.Y.2d 397, 399 (1977) (holding contract existence not dependent on subjective intent and "it is necessary to look, rather, to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds"); *Bennett v. Heidinger,* 30 Ohio App. 3d 267, 268 (1986) ("The relevant inquiry is the manifestation of intent of the parties as seen through the eyes of a reasonable observer, rather than the subjective intention of the parties."); *Petsche v. EMC Mortgage Corp.,* 830 F. Supp. 2d 663, 669 (D. Minn. 2011) ("Under Minnesota law, the test of contractual formation is an objective one, to be judged by the words and actions of the parties and not by their subjective mental intent.") (citation omitted).

Plaintiffs argue that the formatting and placement of the signature line – below two prominent text boxes relating to IRS certifications and above the terms of the contract, renders the SRA "confusing."  *See* Opp. at 4.  Plaintiffs contend, with some reason, that the signature line's placement suggests it was only to attest to the IRS certifications, and not affirm the overall Sales

**United States District Court**

For the Northern District of California

1    Agreement.  They emphasize that the substantive terms of the Agreement appear below the signature

2    line and there was no "advisement to read both pages" before the signature line.  Opp. at 5-6.

3         While not cited by Plaintiffs, there are unpublished opinions that discuss New York law and

4    refer to a rule that "the failure to provide a first page incorporating reference as to additional terms

5    and conditions provided on a separate page vitiates all representations after the signature page."  *See*

6    *Nirvana Int'l, Inc. v. ADT Sec. Servs., Inc.,* 525 F. App'x 12, 14-15 (2d Cir. 2013) (applying New

7    York law)*; Winter Bros. Recycling Corp. v. Barry Imports East Corp.,* No. 20347108, 2009 WL

8    1067409, at \*4 (N.Y.Dist.Ct. Feb. 26, 2009).

9         These cases, however, are distinguishable.  Assuming the rule articulated in these

10    unpublished decisions is good law in New York, it applies to contracts where terms are provided on

11    a *separate page* after the signature page; these cases do not include a contract where terms appear on

12    the *same* page as the signature line.  There is a difference; in this case, the terms appeared

13    immediately beneath the signature line.  There is no risk that the party signing the agreement did not

14    see it (as would be the case where the terms appear on an entirely separate page).  There is also a

15    lesser risk that a party would think the terms appearing on the same page are not part of the

16    agreement.

17         In this case, an objective reading of the SRA reveals to a reasonable person that it

18    encompasses the full two pages of terms, not just the IRS certification.  The agreement is called the

19    "Sales Representative Agreement."  The substantive terms of the agreement appear *immediately*

20    under the signature line on the same page, and the first words of those terms are "[i]t is agreed to by

21    the sales representative."  There is no other signature line for the Sales Rep.  The cover email to the

22    SRA explains that the "electronic document provides in writing the Agreement's terms and

23    conditions that were just reviewed with you by your trainer."  Supp. Matheson Decl., Ex. A.

24         Furthermore, in their declarations, Mr. Atwell and Ms. Reinhart do not represent that they

25    believed the SRA only encompassed the IRS certification.  *See* Atwell Decl.; Reinhart Decl.

26    Instead, Mr. Atwell and Ms. Reinhart agree that they signed the agreement with the understanding

27    that the SRA would allow them to receive payment for their sales.  *Id.*  The second and third

28    provisions of the SRA govern the commission rate that the Sales Reps receive, which are likely to be

United States District Court

For the Northern District of California

1  important terms to the Sales Reps.  Matheson Decl., Exs. 1, 2, 3.  After signing the agreement, Mr.

2  Atwell and Ms. Reinhart sold knives and received commissions, presumably consistent with those

3  terms.  Accordingly, their conduct manifests their understanding that the SRA was not limited to

4  IRS certifications, but rather that its terms governed their contractual relationship with Vector.

5       In light of the objective evidence, and for the reasons stated on the record, the Court finds

6  there was an agreement including as to the terms below the signature line.  *See Chelsea Square*

7  *Textiles, Inc. v. Bombay Dyeing & Mfg. Co.,* Ltd., 189 F.3d 289, 296-97 (2d Cir. 1999) (applying

8  New York state law and holding that when there was an incorporating reference, the "nearly

9  illegible" and "garbled" arbitration clause printed on back of contract bound plaintiffs to arbitrate in

10  India); *see also Marciano v. DCH Auto Grp.,* No. 11-CV-9635, 2014 WL 1612976 (S.D.N.Y. Mar.

11  31, 2014) (upholding arbitration agreement even where defendant made misrepresentations, plaintiff

12  was only presented with signature page, and the arbitration clause did not appear on the signature

13  page).

14  C.  Unconscionability

15       In the alternative, the Wills Plaintiffs argue that the arbitration clause is unconscionable and

16  unenforceable.  Plaintiffs and Defendant agree that under all relevant state law, a showing of both

17  substantive *and* procedural unconscionability is necessary to invalidate a contract.  *See, e.g., State v.*

18  *Wolowitz,* 96 A.D.2d 47, 68 (1983) ("[I]t can be said that procedural and substantive

19  unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice,

20  the less imbalance in a contract's terms should be tolerated and vice versa"); *Jeffrey Mining Prod.,*

21  *L.P. v. Left Fork Mining Co.,* 143 Ohio App. 3d 708, 718 (2001) ("Both elements must be present to

22  find a contract unconscionable."); *RJM Sales & Mktg., Inc. v. Banfi Products Corp.,* 546 F. Supp.

23  1368, 1375 (D. Minn. 1982) ("Unconscionability has two aspects, procedural and substantive.").

24       The procedural aspect generally requires a showing of an "absence of meaningful choice"

25  while the substantive aspect requires a showing of "terms which are unreasonably favorable to the

26  other party."  *See Gillman v. Chase Manhattan Bank, N.A.,* 73 N.Y.2d 1, 10 (1988); *LeMaire v.*

27  *Beverly Enterprises MN, LLC,* No. 12-1768, 2013 WL 104919, at *4 (D. Minn. Jan. 9, 2013); *Stout*

28  *v. J.D. Byrider,* 228 F.3d 709, 716 (6th Cir. 2000) (applying Ohio law).

United States District Court

For the Northern District of California

With respect to substantive unconscionability, courts evaluate whether the terms in question are "commercially reasonable." *See, e.g., Collins v. Click Camera & Video, Inc.,* 86 Ohio App. 3d 826, 834 (1993). Under New York law "an unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be [unenforceable] according to its literal terms." *Gillman,* 73 N.Y.2d at 10 (1988) (citation omitted). Similarly, under Minnesota law "[a] contract is unconscionable if it is such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other." *Overholt Crop Ins. Serv. Co., Inc. v. Bredeson,* 437 N.W.2d 698, 702 (Minn. Ct. App. 1989) (citation omitted).

As to procedural unconscionability, courts look to the totality of the circumstances and the "focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *See Gillman,* 73 N.Y.2d at 11; *see also Crouse v. LaGrange Junction Ltd.,* 973 N.E.2d 822, 825 (Ohio App. 2012) (listing relevant factors as "age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract . . . whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.").

The record here reflects some indicia of procedural unconscionability. The formatting of the contract, *e.g.,* the text boxes around the IRS certifications, the placement of the terms after the signature line, the lack of incorporating language, and the lack of any highlighting of the arbitration clause raise some potential for unfair surprise. The context of the contracting likewise suggests some quantum of procedural unconscionability, *e.g.,* the signing only after the training is substantially complete, the lack of advisories or explanation regarding the arbitration clause, the relative bargaining power of the parties, and the apparent lack of opportunity for the Sales Reps to negotiate.

Nevertheless, the arbitration clause lacks any markers of substantive unconscionability. On its face, the arbitration clause does not favor Vector unreasonably. For example, the arbitration

**United States District Court**
For the Northern District of California

1   clause is bilateral and designates JAMS, a respected neutral, to conduct the arbitration.  The

2   agreement requires that the arbitration must be in reasonable proximity to the Sales Rep.  Vector

3   covers all costs of arbitration other than those that the Sales Rep would incur in filing a lawsuit.

4         Contrary to Plaintiffs' argument, the separate term governing Vector's reservation of rights

5   to amend the SRA upon 30-days' written notice does not render the Agreement substantively

6   unconscionable.  For example, in *Concepcion*, the Supreme Court upheld an arbitration agreement

7   which allowed AT&T to make unilateral amendments.  *See Concepcion,* 131 S. Ct. at 1744 (noting

8   that "[t]he agreement authorized AT&T to make unilateral amendments, which it did to the

9   arbitration provision on several occasions"); *see also Laster v. T-Mobile USA, Inc.,* No. 06CV675,

10  2012 WL 1681762, at *4 (S.D. Cal. May 9, 2012) (observing on remand that the finding that "the

11  arbitration clause is not harsh and one-sided in its result, and thus not substantively unconscionable,

12  is necessarily implied in *Concepcion.*").  More specifically, Ohio courts, relying on the Restatement

13  of Contracts (Second), have found that a 30-day notice period for a unilateral amendment or

14  termination provision provides sufficient consideration to lead to a binding arbitration agreements.

15  *See Crowe v. BE & K, Inc.,* No. 2:09-CV-873, 2010 WL 1640884, at *4 (S.D. Ohio Apr. 22, 2010)

16  (holding a thirty-days' notice provision constitutes sufficient consideration to form a binding

17  arbitration agreement); *see also Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 667 (6th Cir.

18  2003) (holding "Circuit City arbitration agreement was supported by sufficient consideration and a

19  mutuality of obligation" when the right to amend / terminate arose once a year and upon 30-days'

20  notice).

21                           **IV.   CONCLUSION**

22        In this case, an agreement existed that included a valid arbitration clause.  Correspondingly,

23  the Court may either stay or dismiss the claims of Mr. Atwell, Ms. Reinhart, and Ms. Wills, because

24  those claims are subject to arbitration.  *See Johnmohammadi v. Bloomingdale's, Inc.,* --- F.3d ---,

25  No. 12-55578, 2014 WL 2808135, at *1 (9th Cir. June 23, 2014) (finding "a district court may either

26  stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the

27  action are subject to arbitration").  Both sides have expressed a preference for an immediately

28  appealable dismissal.  The individual and class claims of the Wills Plaintiffs are dismissed.

1    For the reasons stated herein and on the record at the hearing, the Defendant's Motion to

2  Compel Arbitration is **GRANTED**, and the individual and class claims of Winfield Atwell, Tiffany

3  Reinhart, and Kristina Wills are dismissed with prejudice.  Tiffany Reinhart and Kristina Wills are

4  the only named plaintiffs for the Ohio and Minnesota putative classes respectively.  Accordingly the

5  Ohio and Minnesota class claims are dismissed from this action without prejudice.

6    This order disposes of Docket No. 44.

7

8    IT IS SO ORDERED.

9

10  Dated:  August 28, 2014

11  _____

12  EDWARD M. CHEN
    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California