KAREN J. KUBIN (CA SBN 71560)
KKubin@mofo.com
LLOYD W. AUBRY, JR. (CA SBN 65089)
LAubry@mofo.com
COLETTE M. COLES (CA SBN 274202)
CColes@mofo.com
DAVID P. ZINS (CA SBN 284919)
DZins@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

WILLIAM J. BRENNAN (PRO HAC VICE)
wbrennan@phillipslytle.com
JAMES R. GRASSO (PRO HAC VICE)
jgrasso@phillipslytle.com
KENNETH A. MANNING (PRO HAC VICE)
kmanning@phillipslytle.com
JOANNA J. CHEN (PRO HAC VICE)
jchen@phillipslytle.com
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, New York  14203-2887
Telephone:  716.847.8400
Facsimile:  716.852.6100

Attorneys for Defendant
VECTOR MARKETING CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WOODS (CA), DOMINIC SEALE (FL), WESLEY VARUGHESE (IL), ERIC ESSLER (MI), KRISTINA WILLS (MN), CASEY MCCALEB (MO), SAMUEL BARONE-CROWELL (NY), LOWELL HARVARD JR. (NY), ALTWELL WINFIELD (NY), TIFFANY REINHART (OH), individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>VECTOR MARKETING CORPORATION and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.   14-CV-00264-EMC<br><br>**DECLARATION OF PAUL MATHESON IN SUPPORT OF DEFENDANT VECTOR MARKETING CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND NOTICE PURSUANT TO 29 U.S.C. § 216(b)**<br><br>Date:     February 26, 2015<br>Time:    1:30 p.m.<br>Ctrm:    5 |

MATHESON DECL. ISO VECTOR'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO. 14-CV-00264-EMC
sf-3500621

1

I, Paul Matheson, declare:

1.      I am the Legal Affairs Manager for Vector Marketing Corporation ("Vector"), defendant in the above-captioned action, and have served in that capacity since 2002.  As Legal Affairs Manager, I serve as the internal company contact and external representative with respect to inquiries or issues of a legal nature, including but not limited to any administrative matter or lawsuit filed against Vector.  In that capacity, I am well-versed in Vector's history, general business operations, policies and practices, and initial training program.  I have attended an initial training seminar in its entirety.  I have also attended a number of conferences where various aspects of Vector's initial training program were discussed, including the topics covered and the sequence and timing of those topics.  In addition, I have access to, am knowledgeable about, and, to the extent necessary to sign this declaration under penalty of perjury, have reviewed Vector's business records regarding its initial training program and its relationships with its sales representatives, including plaintiffs William Woods, Dominic Seale, Wesley Varughese, Eric Essler, Casey McCaleb, Samuel Barone-Crowell and Lowell Harvard Jr. as well as various others identified below who I am informed and believe have signed consent forms to become opt-in plaintiffs in this lawsuit.

**Vector and Its Initial Sales Training Program**

2.      Vector is a direct sales company that sells a line of high-quality kitchen cutlery, kitchen accessories and sporting knives manufactured by CUTCO Cutlery Corporation.  Under its direct marketing sales model, Vector enters into sales representative agreements with independent contractors who meet one-on-one with potential customers to sell CUTCO products.  Representatives set their own schedule and can schedule as many — or as few — appointments as they want.

3.      Around 85 percent of Vector's sales representatives are college-aged, and many if not most have little or no prior sales experience.  Thus, after selecting applicants through a preliminary interview process, Vector provides prospective sales representatives with the opportunity to participate in its initial sales training program, a three-day classroom seminar designed to develop direct-sales skills that will help them succeed as Vector sales representatives

MATHESON DECL. ISO VECTOR'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO. 14-CV-00264-EMC
sf-3500621

2

and in any future endeavors they choose to pursue. During initial training, instructors teach trainees various curriculum topics and lead trainees in completing various assignments and interactive exercises (such as role-playing), among other activities. Trainees are not permitted to conduct any sales demonstrations or to sell any CUTCO products until and unless they complete training, sign sales representative agreements with Vector and are accepted as sales representatives.

4.    Many of those who begin initial training never complete it. Of the individuals who show up for the first day of training, around 20 to 25 percent do not show up for the second day, and another 15 to 20 percent of those do not show up for day three. Overall, approximately 30 to 35 percent of those who begin training do not attend the third day. Trainees who do not complete initial training do not become Vector sales representatives and, thus, do not make any sales presentations or sell any CUTCO products. According to Vector's records, there have been approximately 192,920 individuals since January 16, 2011 who only attended the first one or two days of training and never attended the third day or became sales representatives.

5.    Since approximately March 2011, Vector has also given some trainees the option to complete some or all of their training by watching online training modules. Because online training does not involve interactive exercises, instructor anecdotes regarding real-life sales situations, classroom interaction or repetition of key concepts, it can be completed in a significantly shorter time period than the three-day, classroom-based training seminar. Specifically, online training takes approximately two and a half hours to complete. It further differs from Vector's classroom training in that it does not use a training manual. According to Vector's records, there have been approximately 2,875 individuals who have completed their entire training online and not in a classroom.

6.    It has been Vector's company-wide policy at all times since January 16, 2011 to request personal recruit (also referred to as "PR") lists from trainees only on the third day of the initial training seminar. Attached hereto as Exhibit 1 is a true and correct copy of a document created in approximately 2005 and entitled "Day 3 PR Collection (20-25 MINUTES)." Attached hereto as Exhibit 2 is a true and correct copy of a document created in approximately 2011 and

MATHESON DECL. ISO VECTOR'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO. 14-CV-00264-EMC
sf-3500621

3

entitled "2012 – The PR Program."  Attached hereto as Exhibit 3 is a true and correct copy of a document created in approximately 2012 and entitled "PR App Helpful Hints."  All three of these documents are kept among Vector's business records, and they all reflect the policy that was rolled out nationwide in approximately 2005 or 2006 for Vector's trainers to ask for names of personal recruits on the third day of initial training.

7.     Vector's consistent nationwide policy at all times since January 16, 2011 has been to ask trainees to identify prospective customers during the second day of training.  In addition, trainees consistently are taught how to set up appointments at the very end of the second day, pursuant to Vector's policy, and they generally do not make any calls to set up practice appointments until *after* the second day is complete.  However, even if a person were to set up an appointment before the third day but did not attend day three or sign an agreement with Vector, the appointment is not completed and there are no sales generated by anyone.

8.     Unlike trainees in Vector's classroom-based initial training, trainees who participate only in online training do not provide personal recruit lists, create prospective customer lists or make calls to set up appointments during training.

9.     According to Vector's records, approximately 37,270 individuals attended Vector's initial training at some point from January 16, 2011 through and including May 14, 2011.  An additional approximately 108,390 individuals attended Vector's initial training at some point from May 15, 2011 through and including July 30, 2011, according to Vector's records.

10.    According to Vector's records, approximately 3,339 individuals signed sales representative agreements with Vector from January 16, 2011 through and including April 29, 2011.

**Vector's Arbitration Agreements with Sales Representatives**

11.    Since early 2013, all sales representative agreements between Vector and its newly-contracted sales representatives have contained an arbitration provision. The wording, format and placement of the arbitration provision in the overall agreement have remained consistent and unchanged throughout this time, and they conform to the exhibits attached to the Declaration of Paul Matheson in Support of Defendant Vector Marketing Corporation's Motion

MATHESON DECL. ISO VECTOR'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO. 14-CV-00264-EMC
sf-3500621

4

to Compel Arbitration of Plaintiffs Wills, Atwell and Reinhart's Individual Claims and to Dismiss Their Individual and Class Claims [ECF No. 46]. All agreements containing an arbitration provision are signed electronically on day three of training following a consistent process, which I described previously in the Supplemental Declaration of Paul Matheson in Support of Defendant Vector Marketing Corporation's Motion to Compel Arbitration of Plaintiffs Wills, Atwell and Reinhart's Individual Claims and to Dismiss Their Individual and Class Claims [ECF No. 49]. Trainees sign sales representative agreements during day three of initial training. Virtually all individuals who sign an agreement actually go on to become Vector sales representatives.

12.    Vector knows with precision which individuals have signed an agreement containing an arbitration provision, and every such individual followed the same process in signing it electronically. According to Vector's records, more than 161,200 individuals have signed sales representative agreements with Vector containing a binding arbitration provision. Among these, Vector's records reflect that the following individuals signed sales representative agreements containing an arbitration provision: Winfield Atwell, Lyndsey Blythe, Justin Boyd, Kevin Corkran, Jennyfer A. Duran, Zachary Hinson, Shangyu Jiang, Molly Johnson, Danielle E. Lone, Deon Mayfield, Russell R. Nelson, Britney Parkerson, Vanessa Pierre, Tiffany Reinhart, Brandi L. Snyder, Robert J. Turner, Kristina H. Wills and Kymara Williams.

**The Plaintiffs**

13.    According to Vector's records, Plaintiff William Woods attended all three days of classroom-based initial training in July 2011. After his training was complete, Plaintiff Woods launched as a Vector sales representative and made a total of five sales of CUTCO products.

14.    According to Vector's records, Plaintiff Dominic Seale attended all three days of classroom-based initial training in late May and early June 2012. After his training was complete, Plaintiff Seale launched as a Vector sales representative and made a total of twelve sales of CUTCO products.

15.    According to Vector's records, Plaintiff Wesley Varughese attended all three days of classroom-based initial training in June 2012. After his training was complete, Plaintiff

MATHESON DECL. ISO VECTOR'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO. 14-CV-00264-EMC
sf-3500621

5

Varughese launched as a Vector sales representative and made a total of eleven sales of CUTCO products.

16.    According to Vector's records, Plaintiff Eric Essler attended all three days of classroom-based initial training in late June and early July 2011.  After his training was complete, Plaintiff Essler launched as a Vector sales representative and made a total of nine sales of CUTCO products.

17.    According to Vector's records, Plaintiff Casey McCaleb attended all three days of classroom-based initial training in January 2012.  After his training was complete, Plaintiff McCaleb launched as a Vector sales representative and made a total of six sales of CUTCO products.

18.    According to Vector's records, Plaintiff Samuel Barone-Crowell attended Vector's initial training from June 24 to 26, 2010.

19.    According to Vector's records, Plaintiff Lowell Harvard Jr. attended Vector's initial training from May 12 to 14, 2011.

20.    I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 5, 2015

_____
Paul Matheson

MATHESON DECL. ISO VECTOR'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO. 14-CV-00264-EMC
sf-3500621

6