UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WOODS, *et al.*, | No. C-14-0264 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, APPROVAL OF NOTICE, AND EQUITABLE TOLLING** |
| VECTOR MARKETING CORPORATION, | |
| Defendant. | |
| _____/ | **(Docket No. 118)** |

Pending before the Court is William Woods, Dominic Seale, Wesley Varughese, Eric Essler, and Casey McCaleb's (collectively "Plaintiffs") Motion for Conditional Collective Action Certification and Notice pursuant to 29 U.S.C. § 216(b) ("Motion"). Docket No. 118. In the Motion, Plaintiffs request that the Court extend the tolling of the statute of limitations.

For the reasons stated on the record, and as supplemented herein, the Court **GRANTS** Plaintiffs' uncontested request for conditional certification as a collective action, subject to the parties' meeting and conferring regarding the language defining the group of employees who are similarly situated. The Court **GRANTS** Plaintiffs' requests for a 90-day opt-in period and for authorization of the use of electronic signatures. The Court **DENIES** Plaintiffs' request for equitable tolling. The Court conditionally **GRANTS** Plaintiffs' request for authorization to send

notices pursuant to Plaintiffs' proposed notice program, including through the use of a Facebook ad, however, the Court reserves approval over the precise form of the notices and form of the consent to join. As discussed at the hearing and herein, the parties are ordered to meet and confer regarding the form of notices, the form of the Facebook ad, and the form of the consent to join.

## I. FACTUAL & PROCEDURAL BACKGROUND

This putative class and collective action lawsuit is being brought on behalf of multiple named Plaintiffs[1] and was filed on January 16, 2014. Plaintiffs' Complaint alleges a cause of action for violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* and brings related claims based on state wage and hour laws.

Defendant Vector Marketing Corporation ("Vector") sells CUTCO-brand kitchen cutlery, kitchen accessories, and sporting knives through a "direct marketing" sales model, which involves, among other things, in-home sales appointments conducted by Vector's Sales Representatives. Docket No. 130, Matheson Decl. ¶ 2. The majority of Vector's Sales Representatives are college-aged. *Id.* at ¶ 3. Over 90% of recruits complete Vector's training program before "launching" as Sales Representatives. Docket No. 126-1, Humphrey Decl., Ex. C, Matheson Dep. at 61:7-62:2. Trainees typically spend three days in a classroom. *Id.* at 86:13-16; Matheson Decl. ¶ 3.

Vector does not pay its recruits for time spent in training. Docket No. 126-1, Humphrey Decl., Ex. D, Matheson Dep. at 76:23-25. In their Complaint, Plaintiffs allege that during training they qualified as employees under the FLSA and were therefore entitled to minimum wage. Docket No. 1, Complaint ¶¶ 37-40, 63-77.

There is high turnover among recruits and new Sales Representatives. Vector attests that many of those who begin initial training never complete training and never go on to make any sales presentations or sell any CUTCO products. Matheson Decl. ¶ 4. The Plaintiffs contend that, of the Sales Representatives who complete training, approximately 50% never make a sale or do not

---

[1] Three of the original named plaintiffs were dismissed from this action after being compelled into arbitration. Two other originally-named plaintiffs, Samuel Barone-Crowell and Lowell Harvard Jr., do not bring the pending motion.

2

continue making sales after ten days. During training Vector requests that trainees provide a "personal recruit" list of potential Sales Representatives. Matheson Decl. ¶ 6.

This action is related to *Harris v. Vector Marketing Corporation* (C-08-5198), which included an FLSA claim on behalf of Vector's California Sales Representatives, a group that also alleged that they were employees during training and that Vector failed to compensate them. *See Harris v. Vector Marketing Corp.*, 716 F.Supp.2d 835, 836 (2010). The Court granted conditional and final certification under Section 216 in *Harris*.

The parties agree that, as the Court determined in *Harris*, the test set forth by the Supreme Court in *Walling v. Portland Terminal Co.,* 330 U.S. 148 (1947) provides the framework for determining whether Vector's recruits qualified as employees during training. Docket No. 125, Motion at 4; Docket No. 129, Opp. at 5; *Harris*, 716 F.Supp.2d at 840-41; *see also Harris v. Vector Mktg. Corp.,* 753 F. Supp. 2d 996, 1004-06 (N.D. Cal. 2010). The Court considered the *Portland Terminal* factors in reviewing the parties' cross-motions for summary judgment. The Court denied the parties' cross-motions for summary judgment, concluding that there were material disputes of fact as to the subsidiary factual findings necessary to draw the legal conclusion of whether the recruits were employees or trainees. Docket No. 112. Consequently, Plaintiffs have moved for conditional certification.

## II. DISCUSSION

### A. Legal Standard

The FLSA requires employers to pay their employees a minimum wage. *See* 29 U.S.C. § 206(a). If an employer fails to pay minimum wage, Section 216(b) allows an aggrieved employee to bring a collective action on behalf of himself and "similarly situated" employees. *Id.* § 216(b). A collective action permits plaintiffs to lower the cost of vindicating their rights and promotes the efficient use of judicial resources. *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989). To achieve the benefits of proceeding collectively, employees must receive notice of the pendency of the collective action. *See id.* The Supreme Court has approved trial court involvement in the notice process, because "[c]ourt authorization of notice serves the legitimate goal of avoiding

3

a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.* at 172.

Unlike a Rule 23 class action, employees who wish to take part in an FLSA collective action must provide "consent in writing" which is "filed in the court in which such action is brought." 29 U.S.C. § 216(b). "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.* "Determining whether a collective action is appropriate is within the discretion of the district court." *Harris,* 716 F. Supp. 2d at 837.

B.  Conditional Certification

As this Court previously determined in the *Harris* action, the majority of district courts in this Circuit use a two-step approach for determining whether employees are similarly situated under Section 216(b). *Harris,* 716 F. Supp. 2d at 837; *Adams v. Inter-Con Sec. Sys., Inc.,* 242 F.R.D. 530, 536 (N.D. Cal. 2007); *Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 467 (N.D. Cal. 2004); *Richie v. Blue Shield of California,* No. C-13-2693 EMC, 2014 WL 6982943, at *6 (N.D. Cal. Dec. 9, 2014); *Benedict v. Hewlett-Packard Co.,* No. 13-CV-00119-LHK, 2014 WL 587135, at *5 (N.D. Cal. Feb. 13, 2014); *Lillehagen v. Alorica, Inc.,* No. SACV 13-0092-DOC, 2014 WL 2009031, at *3 (C.D. Cal. May 15, 2014).

The first step, determining whether the proposed class should be conditionally certified for sending out notice to potential class members, is presently before the Court. The standard for the first step is "a lenient one that typically results in certification." *Benedict,* 2014 WL 587135 at *5, *see also Lillehagen,* 2014 WL 2009031, at *3 ("[D]istrict courts apply a lenient standard for certification at this stage, which typically results in certification."); *Harris,* 716 F. Supp. 2d at 837. "The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . ." *Genesis Healthcare Corp. v. Symczyk,* 133 S.Ct. 1523, 1530 (2013).

Under the "lenient" conditional certification standard, "a plaintiff must simply show that there is some factual basis beyond the mere averments in their complaint for the class allegations."

4

*Harris,* 716 F. Supp. 2d at 837 (quotation omitted); *see also Benedict,* 2014 WL 587135, at *5 ("[C]ourts require little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." (quotation omitted)). Plaintiffs must show that an "identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Russell v. Wells Fargo Co.,* No. C07-3993 CW, 2008 WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008) (quotation omitted). At this stage, "courts usually rely only on the pleadings and any affidavits that have been submitted." *Benedict,* 2014 WL 587135, at *5 (quotation omitted).

Plaintiffs contend that Vector's training program and payment policy provide the "identifiable factual or legal nexus" that connects the various claims of the class members. The Court agrees. In this case, it appears undisputed that the training program and payment policy were sufficiently uniform to make the Plaintiffs "similarly situated" to the class members.

Vector's Legal Affairs Manager, Paul Matheson, has submitted a declaration attesting that the training program is subject to certain company-wide policies that have been in place since January 16, 2011, including requesting personal recruit lists on the third day of training and requesting that the trainees identify prospective customers during the second day of training. Docket No. 130, Matheson Decl. ¶¶ 6-7. At his deposition, Mr. Matheson estimated that over 90% of Vector's sales representatives have completed Vector's initial training seminar. Docket No. 126-1, Humphrey Decl. Ex. C at 61:7-62:2.

Indeed, Vector "does not oppose Plaintiffs' request to conditionally certify and circulate notice to an appropriate class of individuals," and instead raises objections that the Court addressed on the record and discusses herein. Docket No. 129 at 5. In view of the foregoing, and as stated at the hearing, the Court **GRANTS** Plaintiffs' request for conditional certification subject to approval of the form of the notices, consent to join, and Facebook ad.

C. <u>Scope of Similarly-Situated Employees</u>

Although Vector does not dispute conditional certification, Vector argues that the proposed class of individuals subject to conditional certification and notice is "overbroad" and includes

1 individuals who are not similarly situated to Plaintiffs. Vector also raises a number of objections to
2 Plaintiffs' proposed notice.
3       Plaintiffs have offered to meet and confer regarding how to address Vector's objections,
4 including those related to individuals who completed online-only training, those related to
5 individuals who agreed to arbitration, those related to individuals who did not complete all three
6 days of training and did not provide a personal recruitment list, those related to individuals whose
7 claims are time-barred, and those related to excluding members of the certified *Harris* class. The
8 Court agreed that the class should be so limited, provided guidance as to doing so on the record, and
9 **DEFERS** final approval as to the precise language regarding the scope of similarly-situated
10 employees until after the parties have met and conferred and agree upon the scope of the collective
11 class.

### D. Notice Program

Plaintiffs propose a notice program that is comprised of:

> (1) an official case website where the putative collective action members can review the official notice and submit an online opt-in form;
> (2) a shortened email notice to all putative collective action members whose email address can be identified from Defendant's records directing them to the official case website;
> (3) a follow-up notice via postcard - sent by U.S. standard mail to putative class members whose email notice was undeliverable, which direct them to the same official case website;
> (4) publication notice on Facebook, which would direct putative collective action members to the official case website; and
> (5) an email or postcard reminder notice (depending on whether the initial email address was valid) to be sent on the 45th day of the opt-in period.

For the most part, the parties agree on the general components of the proposed steps of the notice plan. As discussed herein, the Court finds the components of the proposed notice program to be appropriate.

Plaintiffs propose using Simpluris as Class Action Claims Administrator and have submitted a declaration by Troy Hoffman, Simpluris's CEO, which describes the proposed notice program and

attests to Simpluris's experience facilitating similar notices, processing opt-in claim forms, and administering class actions.[2] For the sake of clarity, the Court addresses a few issues herein.

1. Opt-In Period

As discussed on the record, the Court approves a 90-day opt-in period. The Court ordered a 75-day notice period in *Harris*. In this case, the prospective universe of collective action members is significantly larger. *Harris* identified just under 48,000 prospective collective action members. Docket No. 131-2, at ¶ 5. The Matheson Declarations make clear that there may be over 500,000 potential collective action members in this case. Docket No. 130, Matheson Decl. ¶ 5; Docket No. 142, Matheson Decl. ¶ 2. A group of potential plaintiffs of this size warrants a longer opt-in period. *See Adams v. Inter-Con Sec. Sys., Inc.,* 242 F.R.D. 530, 542 (N.D. Cal. 2007) (finding 90-day deadline to be appropriate in light of the number of potential plaintiffs).

2. Facebook Notice

At the hearing, the Court ordered Plaintiffs to provide more detail on their proposed use of Facebook as part of the notice plan and provided Vector an opportunity to respond. The Court has reviewed the parties' submissions. Plaintiffs have proposed using a short Facebook ad. Docket No. 140-1. When a collective action member clicks on the ad, he or she will be redirected to the case website that has the long-form notice and consent to join form. Before a user can access the consent to join, he or she will need to enter his/her last name and last 4-digits of his/her Social Security Number. If the entry is not a match with the prospective collective action member list, another pop-up would inform the user of the discrepancy with the records. The pop-up would direct the user to a call center if the user believes the records are not correct. A call center representative will have access to a broader set of data to determine whether an error prevented a match. Counsel for both sides will be consulted if the call center determines that an individual should be included.

Vector has objected, primarily raising arguments regarding potential administrative burden and reputational concerns. The Court concludes that the redirection of the ad to the long-form notice, as well as the proposed verification process would significantly reduce, if not eliminate, any

---

[2] In its supplemental briefing, Vector raised for the first time an objection to using Simpluris as claims administrator. The Court overrules Vector's untimely objection.

United States District Court
For the Northern District of California

1 added burden of processing ineligible claims. Moreover, the Court concludes that addressing
2 Vector's specific objections to the language and content of the Facebook ad will adequately protect
3 against any reputational prejudice and will further reduce the likelihood of ineligible claims.

4 The Court finds that using a Facebook ad is a particularly useful form of ensuring actual
5 notice in this case. It is undisputed that a substantial majority of the potential plaintiffs are college-
6 aged. *See* Docket No. 68, Matheson Decl. ¶ 4 ("Around 85% of Vector's sales representatives are
7 college-aged."). In this population, unlike others, it is unclear that email addresses will provide a
8 reliable, durable form of contact – for example, students may have had email addresses that were
9 associated with their colleges and which expired upon graduation. Similarly, physical addresses for
10 students may change after graduation. On the other hand, this population is particularly likely to
11 maintain a social networking presence. *See Mark v. Gawker Media LLC,* No. 13-CV-4347 AJN,
12 2014 WL 5557489, at *4 n.1 (S.D.N.Y. Nov. 3, 2014).

13 Vector itself has recognized the value of Facebook as a tool to reach college-aged
14 individuals. At least one sworn declaration reflects that a Vector representative instructed a trainee
15 to "print off our friends list from Facebook . . . so that Vector could contact [the friends from
16 Facebook]" for recruiting purposes. *See* Docket No. 118-5, Barone-Crowell Declaration, ¶ 14.

17 In light of the particular usefulness of Facebook to reach the population of potential plaintiffs
18 in this case, the Court approves the use of Facebook to supplement the direct notice program. The
19 Court also approves certain aspects of the proposed ad. Vector argues that the pictures of knives
20 with the CUTCO logo may falsely suggest participation or endorsement by CUTCO, a non-party to
21 the lawsuit. The Court disagrees. The title of the ad is "VectorMarketingLawsuit" and the lawsuit
22 concerns training to sell the pictured knives. As reflected by the training manuals the Plaintiffs have
23 attached to their motion, the potential collective action members spent hours in training studying,
24 discussing, and handling these knives. Including pictures of the knives provides a critical visual cue
25 to the Facebook user that this particular ad is relevant to him/her. Moreover, the context of the ad
26 does not suggest endorsement by CUTCO and the CUTCO logo is not prominent in the pictures.
27 These aspects of the ad diminish any risk of prejudice to CUTCO. The Court also finds that
28 Plaintiffs' proposed use of Vector's logo has informational value, does not suggest endorsement by

Vector, and does not unfairly prejudice Vector. *Cf. Nigh v. Humphreys Pharmacal, Inc.,* No. 12-CV-2714-MMA DHB, 2013 WL 399179, at *4 (S.D. Cal. Jan. 29, 2013) (ordering parties to modify Rule 23 notice to "prominently include the logo of Defendant").

Nevertheless, the Court finds certain of Vector's objections to be reasonable. The Court orders the parties to meet and confer regarding the content of the Plaintiffs' proposed ad. The Court agrees that the exemplar ad provided by Plaintiffs needs refinement. The time frame in the first line of the ad appears to include time-barred claims. The proposed ad text "If so, You may be able to particpate [sic] in a Lawsuit to Recover Compensation for your Training Time" would benefit from enhancement. The capitalization is confusing and potentially misleading to the extent it suggests that the capitalized terms are defined in a settlement agreement. Furthermore, a more general indication that the lawsuit is regarding compensation for training time rather than alluding to "recovery" better balances the message.

Plaintiffs' proposal for the pop-up on the case webpage may also be confusing. It appears that Plaintiffs anticipate that the wording would communicate to the user that he is "not a Collective Action member." Docket No. 140-1. The Court agrees that a more nuanced, accurate message would communicate that the available records reflect that the user is "not eligible to become a Collective Action member." The parties shall meet and confer regarding a stipulated form of the Facebook ad, consistent with the foregoing.

3.  Electronic Signatures

As discussed at the hearing, the Court agrees that potential collective action members should be allowed to opt-in electronically. Technology has advanced since the *Harris* action wherein the Court concluded that electronic signatures could raise authenticity issues. Vector has recognized these advances in its own practices, and Vector has previously touted the reliability of electronic signing practices as to its Sales Representative Agreements. *See* Docket No. 48. At present, it is clear that electronic signatures are part of the ordinary course of business at Vector, including with respect to its Sales Representatives. Moreover, the Court finds that Plaintiffs have proposed sufficient safeguards, including, but not limited to, a robust identity verification process, to ensure that the electronic signatures will be obtained in a way that minimizes any disputes regarding

1 authenticity. The Court therefore finds that electronic signatures are appropriate in this case and
2 **GRANTS** Plaintiffs' request for electronic opt-ins.

3 E. Equitable Tolling

4 A cause of action for compensation due under the FLSA is subject to the statute of
5 limitations of 29 U.S.C. § 255, which provides that an action "must be commenced 'within two
6 years after the cause of action accrued,' unless the cause of action arises 'out of a willful violation.'"
7 *Dent v. Cox Commc'ns Las Vegas, Inc.,* 502 F.3d 1141, 1144 (9th Cir. 2007) (quoting 29 U.S.C. §
8 255(a)). Where there is a willful violation, the limitations period is three years. *Id.* "For purposes
9 of calculating the timeliness of a claim, claims for collective action members who are not named
10 plaintiffs are considered commenced when the member files a written consent to become a party
11 plaintiff." *Ash v. Bayside Solutions, Inc.,* No. 14-CV-02183- WHO, 2015 WL 427731, at *5 (N.D.
12 Cal. Jan. 30, 2015) (citing 29 U.S.C. § 256(b)).

13 The statute of limitations for the FLSA is subject to equitable tolling, although typically
14 "[e]quitable tolling is extended sparingly and only where claimants exercise diligence in preserving
15 their legal rights." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990) (citing *Baldwin
16 County Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984)).

17 There are two general situations warranting equitable tolling: (1) where the plaintiffs actively
18 pursued their legal remedies by filing defective pleadings within the statutory period, and (2) where
19 the defendants' misconduct induces failure to meet the deadline. *Irwin,* 498 U.S. at 96. In essence,
20 the inquiry should focus on fairness to both parties. *See generally id.; Partlow,* 645 F.2d at 760-61
21 (refusing to hold the plaintiffs liable for the actions of their counsel that would deprive the plaintiffs
22 of their legal rights due to no fault of their own); *Adams,* 242 F.R.D. at 542-43 (holding equitable
23 tolling appropriate where defendant deliberately delayed in providing contact list).

24 In this case, the parties stipulated to toll the statute of limitations from May 15, 2014 through
25 the date that the Court disposed of the parties' cross-motions for summary judgment, *i.e.,* November
26 20, 2014. Docket No. 55. Plaintiffs now seek equitable tolling, on the basis of the delay caused by
27 the case reassignment and by arguing that Vector could have shortened the process of moving for
28

conditional certification by informing Plaintiffs that it would not oppose substantial portions of the Motion.

As stated at the hearing, the Court recognizes that there is a split of authority between (1) cases in the Northern District which decline to equitably toll the statute of limitations on account of the pendency of a motion for conditional certification and (2) a handful of cases from other district courts that find that the time required for a ruling on certification of a collective action justifies equitable tolling. *Compare Ash,* 2015 WL 427731, at *5 (N.D. Cal. Jan. 30, 2015) ("There is no indication that Bayside's opposition to plaintiffs' motion for conditional certification was brought in bad faith and 'good faith motion practice by a defendant does not amount to wrongful conduct warranting equitable tolling of FLSA claims.'"); *Adedapoidle-Tyehimba v. Crunch,* LLC, No. 13-CV-00225-WHO, 2013 WL 4082137, at *7 (N.D. Cal. Aug. 9, 2013) (same); *Alvarez v. Farmers Ins. Exch.,* No. 14-CV-00574-WHO, 2014 WL 4685031, at *5 (N.D. Cal. Sept. 19, 2014) (same); *with Kellgren v. Petco Animal Supplies, Inc.,* No. 13CV644-L KSC, 2014 WL 2558688, at *4-5 (S.D. Cal. June 6, 2014) (citing *Yahraes v. Restaurant Assocs. Events Corp.,* 2011 WL 844963 at *2 (E.D.N.Y.2011)).

As stated at the hearing, the Court finds the reasoning in Judge Orrick's decisions to be more faithful to the statute. As Judge Orrick recognized:

> when Congress enacted Section 256 of the FLSA, it was aware that "time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period." *Woodard v. FedEx Freight E., Inc.,* 250 F.R.D. 178, 194 (M.D.Pa.2008). Consistent with Congressional design then, good faith motion practice by a defendant does not amount to wrongful conduct warranting equitable tolling of FLSA claims.

*Adedapoidle-Tyehimba,* 2013 WL 4082137, at *7. It is noteworthy that the wording of the FLSA differs from that of Federal Rule of Civil Procedure 23. Judge Orrick's analysis accounts for that difference.

Although there is still room for equitable tolling under *Irwin,* in this case, while the conduct of Vector's counsel may not have been exemplary of the highest professional courtesy, Plaintiffs

11

have not sufficiently shown that Vector's counsel engaged in misconduct or misrepresentations reflective of bad faith or otherwise of the type that justifies equitable tolling. *Cf. Guifu Li v. A Perfect Franchise, Inc.,* No. 5:10-CV-01189-LHK, 2011 WL 4635198, at *16 (N.D. Cal. Oct. 5, 2011) (tolling due to evidence that defendant "intimidated members of the putative class by coercing them to sign opt-out forms at individual meetings"). Nor has there been a sufficient showing that any time that has elapsed was not of the kind that Congress anticipated would pass when Congress enacted Section 256. *Adedapoidle-Tyehimba,* 2013 WL 4082137, at *7. The Court therefore **DENIES** Plaintiffs' request for equitable tolling.

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

1) Plaintiffs' motion to conditionally certify a collective class is **GRANTED** subject to the parties' agreement on language defining the scope of the collective class.

2) Plaintiffs' request to designate a 90-day opt-in period is **GRANTED.**

3) Plaintiffs' request for authorization to send notices pursuant to Plaintiffs' proposed notice program, including the creation of a case website with long-form notice, use of a short-form email notice, use of a follow-up notice via postcard, use of an email or postcard reminder notice, use of electronic opt-ins, and use of a Facebook ad, is **GRANTED** subject to the Court's approval over the precise form of the notices, ad, and consent to join.

4) Counsel shall confer and submit in a joint report stipulated versions of the form notices, consent to join, and Facebook ad.

5) Vector shall produce to Simpluris, the proposed third-party claim administrator, a putative collective action member list setting forth the last-known address, telephone numbers, email addresses, dates of training, and partial security numbers within fourteen (14) days of the date of this order.

/ / /

/ / /

6) To the extent the parties cannot reach agreement on items (1), (3), or (4) within seven days of the date of this order, each side shall submit the versions that they propose in the joint report within ten (10) days of the date of this order.

This order disposes of Docket No. 118.

IT IS SO ORDERED.

Dated: March 16, 2015

_____
EDWARD M. CHEN
United States District Judge