1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7

8    WILLIAM WOODS, *et al.*,                   No. C-14-0264 EMC

9           Plaintiffs,                         **ORDER (1) GRANTING IN PART AND
                                                DENYING IN PART PLAINTIFFS'**
10          v.                                  **MOTION FOR CLASS
                                                CERTIFICATION; AND (2) DENYING**
11   VECTOR MARKETING CORPORATION,              **DEFENDANT'S MOTION TO
                                                PARTIALLY DECERTIFY FLSA**
12          Defendant.                          **COLLECTIVE ACTION**
     _____/
13                                              **(Docket Nos. 178, 192)**

14

15

16                          **I.    INTRODUCTION**

17          The Plaintiffs in this action participated in Defendant Vector Marketing Corporation's sales

18   training program.[1]  It is undisputed that the Plaintiffs were not paid for any of the time they spent in

19   training.  Vector argues this was entirely appropriate, as the Plaintiffs were its trainees not entitled to

20   any wages.  Plaintiffs argue otherwise, and contend that Vector's recruits are actually employees

21   who are entitled to various employment benefits, such as receipt of minimum or overtime wages.

22   *See* Docket No. 1 (Complaint).  Currently pending before the Court is Plaintiffs' motion for final

23   certification of a collective action under the FLSA, as well as certification of five state law wage-

24   and-hour class actions under Federal Rule of Civil Procedure 23 (Rule 23).  Docket No. 178 (Class

25   Cert. Mot.).  Vector has also moved for partial decertification of Plaintiffs' FLSA collective action.

26   Docket No. 192 (Decertification Mot.).

27   _____

28          [1]  Plaintiffs are William Woods (California), Dominic Seale (Florida), Wesley Varughese
     (Illinois), Eric Essler (Michigan) and Samuel Barone-Crowell (New York).

**United States District Court**
For the Northern District of California

On March 16, 2015, this Court conditionally certified a collective action under the Fair Labor Standards Act (FLSA). *Woods v. Vector Mktg. Corp.*, No. 14-cv-264-EMC, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015). It was not the first time this Court has conditionally certified an FLSA collective action brought on behalf of Vector trainees. *See Harris v. Vector Mktg. Corp.* (*Harris I*), 716 F. Supp. 2d 835 (N.D. Cal. 2010). In fact, this Court has previously granted final certification of an FLSA collective action involving Vector trainees, and has further granted class certification under Federal Rule of Civil Procedure 23 (Rule 23) of California wage-and-hour claims brought against Vector by its recruits. *See Harris v. Vector Mktg. Corp.* (*Harris II*), 753 F. Supp. 2d 996 (N.D. Cal. 2010). As will be discussed in this Order, a substantially similar result is required here. Indeed, the large majority of Vector's arguments currently before the Court were previously raised and rejected by this Court in *Harris*.

For the reasons explained below, and further for the reasons articulated at the hearing on this matter, the Court finds that final certification of an FLSA collective action is appropriate here because the Plaintiffs and the FLSA opt-ins are "similarly situated" such that adjudication of their legal claims in one collective proceeding would be both fair and efficient. *See Harris II*, 753 F. Supp. 2d at 1005. The Court similarly finds that the requirements of Rule 23 are met with respect to Plaintiffs' proposed class actions under the wage and hour laws of California, Florida, Illinois, Michigan, and New York. Notably, Vector concedes that many of the Rule 23 requirements, including commonality and predominance, are satisfied here. And with the exception of one argument regarding California recruits who agreed to arbitrate their claims against Vector, the Court finds Vector's remaining Rule 23 arguments to be without merit.

///
///
///
///
///
///
///

2

## II.   BACKGROUND[2]

A.   Factual Background

Vector sells CUTCO-brand kitchen cutlery, kitchen accessories, and sporting knives through a "direct marketing" sales model which involves, among other things, in-home sales appointments conducted by Vector's Sales Representatives.  Docket No. 193 (Matheson Decl.) at ¶ 2.  The majority of Vector's Sales Representatives are college-aged, and many have no prior sales experience.  *Id.* at ¶ 3.

Before an individual can "launch" as a Sales Representative, they typically must receive some form of training from Vector.  Matheson Decl. at ¶¶ 3-5; *see also* Docket No. 194 (Humphrey Decl.), Ex. C (Matheson 8/5/14 Depo. Tr.) at 61:7-62:24 (Vector's Legal Affairs Coordinator testified that at least 90% of Sales Representatives complete Vector training, and further testified that "it's necessary to participate in [Vector's] initial training . . . to become a successful sales representative").  An individual interested in becoming a Vector Sales Representative can choose to receive training either online or via a "three-day classroom seminar."  Matheson Decl. at ¶¶ 3-4.  Because only recruits who attended in-person training are members of the putative collective and class actions at issue here, the Court will focus its attention on Vector's in-person training practices.  *See* Docket No. 195 at 1 n.1 (acknowledging that the parties have stipulated to exclude from any class all individuals who completed their training online).

There is little factual dispute about how Vector's in-person training program is conducted.  Training typically occurs over the course of 3 days, and lasts five hours per day excluding any take home assignments.  *See* Humphrey Decl., Ex. D. at 126:25-127:6.  Nor is there dispute over the content of the training:  Training is conducted using standardized manuals, the substance of which the parties agree has remained largely identical over time and in all geographic regions where Vector

---

[2]  Given the long history of this litigation, the Court assumes some familiarity with the factual and procedural history of this case.  *See generally, Harris II*, 753 F. Supp. 2d 996 (N.D. Cal. 2010) (granting Rule 23 class certification and final collective action certification in similar litigation); *Woods*, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015) (conditionally certifying FLSA collective action in this case); *Woods v. Vector Mktg. Corp.*, No. 14-cv-264-EMC, 2015 WL 2453202 (N.D. Cal. May 22, 2015) (granting in part and denying in part Vector's motion for partial summary judgment in this case).

United States District Court

For the Northern District of California

1    operates.  *See, e.g.*, Docket No. 179 (Saltzman Decl.), Exs. 1A and 1B (summary charts detailing

2    overwhelming similarities between Vector training manuals); *id.*, at Exs. 2-36 (Training Manuals).

3    While Vector claims it prohibits its recruits from actually selling any knives during the training

4    period, at some point during the three-day seminar trainees are asked to create lists of potential

5    customers ("customer lists") who might want to purchase Vector's products and schedule

6    appointments with these individuals for sales demonstrations after training has ended.  *See, e.g.*,

7    Saltzman Decl., Ex. 7 at 16-17 (training manual with phone script for trainee to use to set up sales

8    appointments); *Id.*, Ex. 9 ("The reason I am calling is I just started a new job.  And as part of my

9    training, I'm required to put on some initial appointments.").  There is similarly no dispute that as

10   part of something Vector calls the "Personal Recommendation Program," trainees are asked to

11   provide Vector with a list of friends and other potential recruits ("recruit lists") who might want to

12   train to become Vector Sales Representatives.  *See, e.g.*, Saltzman Decl., Ex. 36C (Vector Training

13   Transcript) at 175:21-187:16; *id.* at 182:14-19 (training instructor telling trainees to "put a star next

14   to the ones you want [Vector] to focus on, the ones that you're like 'Oh, definitely call this person.  I

15   know they're looking for work or I know they'd be really good.'  But everybody else, you never

16   know . . . so just put them down anyways"); *id.* at 178:13-25 (promising the first three trainees who

17   provided Vector 75 recruit names a "free peeler" and promising any trainee who provided more than

18   100 names a "supreme burrito"); *see also* Docket No. 188 (Barone-Crowell Decl.) at ¶ 14 (averring

19   that Vector trainees were asked to provide "recruit lists," and that he printed a list containing

20   hundreds of his Facebook friends that he then supplied to Vector).

21        Not every recruit completes all three days of training.  *See* Matheson Decl. at ¶ 5. Those that

22   do, however, become eligible to serve as Vector Sales Representatives.  *See* Matheson 8/5/14 Depo.

23   Tr. at 86:13-17.  There is no dispute that Vector does not pay its recruits for any time they spend in

24   training.

25        In the training courses attended by the named Plaintiffs, 97% of the trainees who completed

26   all three days of training ultimately signed Sales Representative Agreements (SRAs) in order to sell

27   cutlery for Vector.  *See* Humphrey Decl., Ex. E.  At least some of Vector's SRAs contain an

28   arbitration clause that purports to require the Sales Representative to arbitrate any disputes "related

United States District Court

For the Northern District of California

1  to . . . the Sales Rep's initial training" at either JAMS or before the AAA. *See Woods v. Vector*

2  *Mktg. Corp.*, No. 14-cv-264-EMC, 2014 WL 4348285, at *1 (N.D. Cal. Aug. 28, 2014) (compelling

3  arbitration of certain named Plaintiffs' claims). The Court has previously found that the arbitration

4  provision in the SRAs is enforceable. *Id.* at *5.

5  B.    Procedural Background

6        As indicated above, this is not the first time Vector has faced claims that it improperly denies

7  its recruits minimum wages and other statutorily required employment benefits for the time they

8  spend in training to become Sales Representatives. In the *Harris* litigation, this Court certified an

9  FLSA collective action on behalf of "all individuals who worked for Vector in the state of California

10  as Sales Representatives from April 15, 2006, through May 12, 2010." *Harris II*, 753 F. Supp. 2d at

11  1023. The Court had previously determined that the proper legal standard for determining whether a

12  trainee is "employed" within the meaning of the FLSA (and under California law, as well) is the

13  Department of Labor/*Portland Terminal* test.[3]  *See Harris I*, 716 F. Supp. 2d at 840. Under the

14  *Portland Terminal* test, the fact-finder considers whether:

15        (1) the "training, even though it includes actual operation of the
          facilities of the employer, is similar to that which would be given in a
16        vocational school"; (2) the "training is for the benefit of the trainee";
          (3) the "trainees do not displace regular employees, but work under
17        close observation"; (4) the "employer that provides the training
          derives no immediate advantage from the activities of the trainees and
18        on occasion his operations may actually be impeded"; (5) the "trainees
          are not necessarily entitled to a job at the completion of the training
19        period"; and (6) the "employer and the trainees understand that the
          trainees are not entitled to wages for the time spent in training."

20

21  *Harris II*, 753 F. Supp. 2d 1006 (citation omitted). In *Harris*, the Court found that final certification

22  of the FLSA claims for minimum wages was appropriate because the "*Portland Terminal* factors are

23  largely susceptible to collective treatment" in light of the fact that they could be analyzed using

24  proof common to nearly all collective action members. *Id.* at 1010.

25        The Court also found that the *Harris* plaintiffs had met their burden to certify a class action

26  under Rule 23 to pursue claims under California law alleging that Vector (1) failed to pay minimum

27  ――――――――――――――――――――

28        [3]  The DOL/*Portland Terminal* test is derived from factors identified by the United States
      Supreme Court in *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947).

United States District Court

For the Northern District of California

1  wages; (2) coerced trainees into purchasing a sample knife kit; and (3) failed to reimburse trainees

2  for necessary expenses of training, including the sample knife set.  *Harris*, 753 F. Supp. 2d at 1012.

3  The Court ultimately certified a Rule 23(b)(3) class "defined as all individuals who worked for

4  Vector in the state of California as 'Sales Representatives' from October 15, 2004 through the date

5  of the class notice."  *Id.* at 1023.  Class notice was mailed around September 2011, and the *Harris*

6  case eventually settled in February 2012.  *See Harris*, No. 08-cv-5198, Docket Nos. 450 at 18;

7  Docket No. 516 (Order Granting Final Approval).

8         This case was filed on January 16, 2014, by the same attorneys who represented the plaintiffs

9  in *Harris*.  Once again, Plaintiffs contend that Vector has unlawfully refused to pay its recruits for

10  the time they spend in training.  *See* Complaint.  More specifically, Plaintiffs still believe that

11  Vector's recruits are the firm's employees under the *Portland Terminal* test.  They argue that the

12  *Portland Terminal* analysis will reveal that Vector's trainees are its employees as a matter of law

13  under not just the FLSA, but under California, Florida, Illinois, Michigan, and New York law as

14  well.  The Court will discuss the procedural history of the FLSA claim first, before discussing the

15  state law claims.

16         1.    FLSA Claims

17         As in *Harris*, the current complaint alleges an FLSA claim for failure to pay minimum

18  wages.  The FLSA claim is brought on behalf of all Vector trainees nationwide that attended training

19  during the relevant collective action period.  The Court previously granted Plaintiffs' motion for

20  conditional certification of an FLSA collective action.  *Woods*, 2015 WL 1198593.  Notice was

21  subsequently provided to members of the conditionally certified FLSA class, which is defined as

22  follows:

23              All individuals who attended all three days of Vector's initial training,
              or attended some portion of Vector's initial training and provided
24              personal recruit names during training, and who did not complete their
              entire training online, and who did not enter into a sales representative
25              agreement containing an arbitration clause, at any time on or after
              September 22, 2011.

26

27  Docket No. 146 at 2; Docket No. 152.  The conditionally certified FLSA collective action in this

28  case is significantly broader than that which was ultimately certified in *Harris*.  *See Woods*, 2015

WL 1198593, at *4. This is largely due to the fact that the *Harris* collective action only included trainees who trained with Vector in California, while the proposed FLSA collective action proposed here is nationwide. Ultimately, notice was sent to roughly 145,000 potential collective action members. *See* Docket No. 201 (Noguera Decl.) at ¶ 14. Exactly 4,500 individuals filed timely and valid opt-in forms to join the collective action. *Id.*

Vector has now filed a motion for partial decertification of the FLSA collective action. Specifically, Vector argues that any individuals who did *not* provide recruit lists during training should be excluded from this FLSA collective action because they are not "similarly situated" with the other collective action members or named Plaintiffs. *See* Decertification Mot. at 8. Vector also argues that a two-year limitations period should apply to any collective FLSA claims, rather than the three-year limitations period that could apply if Plaintiffs proved "willful" violations of the FLSA. *Id.* at 11-13.

2. State Law Claims

Plaintiffs' complaint also asserts various state law wage-and-hour claims against Vector. Specifically, Plaintiffs currently seek class certification of the following claims:

| State | Claims Asserted |
|-------|-----------------|
| California | Failure to Pay Minimum or Overtime Wages (Cal. Lab. Code §§ 1194, 1197); Unfair Competition and Unlawful Business Practices (Cal. Bus. and Prof. Code § 17200). |
| Florida | Failure to Pay Minimum and/or Overtime Wages (Fla. Stat. § 48.110 and Fla. Constitution Article X, § 24). |
| Illinois | Failure to Pay Minimum and/or Overtime Wages (820 Ill. Comp. Stat. §§ 105, *et seq.*). |
| Michigan | Failure to Pay Minimum and/or Overtime Wages (Mich. Comp. Laws §§ 408.382, 408.384, 408.393, 408.394). |
| New York | Failure to Pay Minimum and/or Overtime Wages (12 N.Y. Comp. Codes R. & Regs. Part 142-2, *et seq.* and N.Y. Lab. Law §§ 2 and 650, *et seq.*) Failure to Pay Wages Upon Termination (N.Y. Lab. Law §§ 191, 198) |

While the precise state law claims vary, each concern Vector's undisputed policy of not paying trainees any wages. Crucially, it is undisputed that resolution of Vector's liability for each state law claim asserted turns on a common threshold legal issue – whether Vector trainees are the company's employees under the *Portland Terminal* test. *See* Docket No. 198 (Class Cert. Opposition Brief) at 16 (conceding that "the *Portland Terminal* test for determining whether trainees are employees for purposes of the FLSA applies equally to all of [Plaintiffs'] state and federal law claims"). That is, the parties are in agreement that application of the *Portland Terminal* analysis will resolve not just Vector's liability under the FLSA, but its liability (or lack thereof) with respect to all of the Plaintiffs' state law claims as well.

Plaintiffs have now moved to certify their state law claims pursuant to Rule 23(b)(3). Specifically, the Plaintiffs seeks to certify the following five classes, and one subclass:

| State | Plaintiffs' Proposed Class Definition |
| --- | --- |
| California | All individuals in California, who, since January 16, 2010, through the date a final judgment is rendered, either (a) attended all three days of Vector's initial training program, or (b) attended some portion of Vector's training program and provided a list of individuals they thought might be interested in becoming sales representatives for Vector.<br><br>Excluded from the California class are those individuals who completed their initial training entirely online or who did not opt out of the case captioned: *Harris v. Vector Marketing Corp.*, Civil Action Number 08-5198, before the United States District Court for the Northern District of California |

**United States District Court**
For the Northern District of California

| **State** | **Plaintiffs' Proposed Class Definition** |
|---|---|
| Florida | All individuals in Florida, who, since January 16, 2012, through the date a final judgment is rendered, either (a) attended all three days of Vector's initial training program, or (b) attended some portion of Vector's training program and provided a list of individuals they thought might be interested in becoming sales representatives for Vector.<br><br>Excluded from the Florida class are those individuals who completed their entire initial training online or who signed a sales representative agreement with an arbitration clause. |
| Illinois | All individuals in Illinois, who, since January 16, 2011, through the date a final judgment is rendered, either (a) attended all three days of Vector's initial training program, or (b) attended some portion of Vector's training program and provided a list of individuals they thought might be interested in becoming sales representatives for Vector.<br><br>Excluded from the Illinois class are those individuals who completed their entire initial training online or who signed a sales representative agreement with an arbitration clause. |
| Michigan | All individuals in Michigan, who, since January 16, 2011, through the date a final judgment is rendered, either (a) attended all three days of Vector's initial training program, or (b) attended some portion of Vector's training program and provided a list of individuals they thought might be interested in becoming sales representatives for Vector.<br><br>Excluded from the Michigan class are those individuals who completed their entire initial training online or who signed a sales representative agreement with an arbitration clause. |

United States District Court

For the Northern District of California

| **State** | **Plaintiffs' Proposed Class Definition** |
|---|---|
| New York | All individuals in New York, who, since January 16, 2008, through the date a final judgment is rendered, either (a) attended all three days of Vector's initial training program, or (b) attended some portion of Vector's training program and provided a list of individuals they thought might be interested in becoming sales representatives for Vector.

Excluded from the New York class are those individuals who completed their entire initial training online or who signed a sales representative agreement with an arbitration clause.

**New York Subclass**:  All members of the New York Class whose employment with Defendants terminated during the New York Class Period. |

*See* Class Cert. Mot. at 5-6.

As should be apparent from the above chart, the class definitions are largely identical except with respect to the selection of the appropriate class period.[4]  For the purposes of this motion, however, there is one very material difference between the proposed class definitions.[5]  Whereas Plaintiffs have "excluded" those individuals "who signed a sales representative agreement with an arbitration clause" from the Florida, Illinois, Michigan, and New York classes, the proposed California class definition *includes* individuals who have signed an arbitration agreement with Vector.  As will discussed below, however, the ultimate California class as certified must (like the other four proposed state law classes) exclude individuals who signed an arbitration agreement with Vector.

---

[4]  The Court presumes that the class periods differ because the limitations periods under state law vary from two years in Florida to four years in California and six in New York.

[5]  Vector does not argue that the proposed New York subclass cannot be certified *if* the New York class is certified.  Rather, Vector's only arguments in opposition to the New York subclass are those that also fully apply to the New York class as a whole.  Hence, the Court will not specifically discuss the proposed New York subclass or perform a separate Rule 23(b)(3) analysis for that class. If the New York class can be certified, the New York subclass can similarly be certified for the exact same reasons.

**United States District Court**
For the Northern District of California

### III.   FLSA COLLECTIVE ACTION

In this section of the order, the Court considers whether Plaintiffs' FLSA claims can continue as a collective action, and specifically considers Vector's arguments that certain collective action members' class must be decertified.  The Court will first discuss the applicable legal standard before applying that standard in the following sections.

A.    Legal Standard

Plaintiffs seeking to certify and maintain an FLSA collective action must demonstrate that the collective action members are "similarly situated."  29 U.S.C. § 216(b).  As this Court has noted on prior occasions, "[n]either the statute nor the Ninth Circuit has defined when employees are 'similarly situated.'"  *Richie v. Blue Shield of Cal.*, No. 13-cv-2693-EMC, 2014 WL 6982943, at *6 (N.D. Cal. Dec. 9, 2014).  That said, a "majority of district courts (and a number of circuit courts)" have "adopted a two-step approach for determining whether putative FLSA class members are 'similarly situated.'"  *Id.* (citations omitted).  The undersigned followed the two-step approach both in *Harris* and, more recently, in *Richie*.  *See Harris II*, 753 F. Supp. 2d at 1003; *Richie*, 2014 WL 6982943, at *6.  Neither of the parties suggest that the Court deviate from this approach now, and so the Court will once more apply the two-step FLSA framework.

Under the first step, the court determines whether the proposed class should be conditionally certified for the sole purpose of sending out notice of the proposed action to the potential class members.  *See Lillehagen v. Alorica, Inc.*, No. SACV 13-0092-DOC, 2014 WL 2009031, at *3 (C.D. Cal. May 15, 2014); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013) ("The sole consequence of conditional certification is the sending of court-approved written notice to employee . . . .").  At this preliminary notice stage, "courts require little more than substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'"  *Benedict v. Hewlett-Packard Co.*, No. C13-0119-LHK, 2014 WL 587135, at *5 (N.D. Cal. Feb. 13, 2014).  What this requires is the plaintiff to show that some "identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA."  *Richie*, 2014 WL 6982943 at *6.  "In making this

1  determination, courts usually rely only on the pleadings and any affidavits that have been

2  submitted." *Id.* (internal quotation marks and citations omitted); *see also Leuthold v. Destination*

3  *America, Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. 2004)).  This Court has already determined that

4  Plaintiffs have made an adequate showing at step one, and therefore notices went out to the putative

5  collective action members.[6]  *See Woods*, 2015 WL 1198593, at *7.

6       At the "second step of the two-step inquiry, 'the party opposing the certification may move

7  to decertify the class once discovery is complete.'" *Benedict*, 2014 WL 587135, at *6 (quoting

8  *Adams*, 242 F.R.D. at 536).  Thus, this step occurs after the conditional class has received notice and

9  discovery has been completed.  *Leuthold*, 224 F.R.D. at 467.  In addressing the defendant's motion

10  to decertify, the court must make a "factual determination about whether the plaintiffs are similarly

11  situated by weighing such factors as:

12       (1) the disparate factual and employment settings of the individual
        plaintiffs; (2) the various defenses available to the defendants with
13      respect to the individual plaintiffs; and (3) fairness and procedural
        considerations."

14

15  *Harris II*, 753 F. Supp. 2d at 1003.

16       The court applies a stricter standard at step-two "because there is much more information

17  available, 'which makes a factual determination possible.'" *Harris I*, 716 F. Supp. 2d at 837-38

18  (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1123 (E.D. Cal. 2009)).  Even

19  with this stricter standard, however, courts have noted that the second step analysis under the FLSA

20  is still different from, and easier to satisfy than, the Rule 23 class certification requirements.  *See*

21  *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009).  Finally, it is important

22  to remember that what the Court is ultimately being called on to decide at step two "is whether there

23  is *enough* similarity between" the claims of the named Plaintiffs "and other putative collective

24  action members such that the case should proceed as a collective action." *Harris II*, 753 F. Supp. 2d

25  at 1005 (emphasis added).  Exact similarity is not required.

26

27  ─────────────

28       [6]  As noted above, exactly 4,500 individuals have filed opt-in notices, and seek to participate
    in this putative collective action.  Noguera Decl. at ¶ 14.

United States District Court

For the Northern District of California

B.     The Collective Action Members Are Similarly Situated

In order to adjudicate whether Vector recruits are *bona fide* trainees rather than employees, the fact-finder must apply the *Portland Terminal* test.  As noted above, the question at this stage is not the merits question (*i.e.*, the proper classification of Vector's recruits under the FLSA), but simply whether "the factors making up the [*Portland Terminal*] test can be evaluated on a collective basis – *i.e.*, there is sufficient uniformity."  *Harris II*, 753 F. Supp. 2d at 1005.

Vector agrees that five out of the six *Portland Terminal* factors can be adjudicated on a classwide basis using uniform proof.  Indeed, in its opposition to Plaintiffs' class certification motion – discussed in more detail below – Vector concedes that both the Rule 23 commonality and predominance tests are met.  That is, Vector essentially concedes that the *Portland Terminal* test can be uniformly applied to all of its trainees without significant individual variation, as this Court previously held in *Harris II*.  *See* 753 F. Supp. 2d at 1005-10.[7]  Nevertheless, Vector argues that a portion of the conditionally certified FLSA class must be decertified because there is a potential for variation on the fourth *Portland Terminal* factor – whether the alleged employer derives immediate advantage from the trainees' activities.  *See* Docket No. 192 at 8-11.

Specifically, Vector argues that recruits that attended all three days of Vector's training, but who did *not* provide any recruit names to Vector during the Personal Recommendation Program are not "similarly situated" to those other Vector recruits who *did* provide recruit lists.  Vector argues that the Court should decertify the FLSA collective action to the extent it includes individuals who did not provide recruit names to Vector.  The Court disagrees.

First, Vector's argument fails to recognize the importance of its concession that five of the other six *Portland Terminal* factors can be uniformly adjudicated using common proof on a classwide basis.  As this Court has previously held, the working environment for all Vector trainees is the same nationwide, and Vector has an undisputed policy of not compensating recruits for time

---

[7]  Vector does not argue that this Court's analysis of the various *Portland Terminal* factors in *Harris II* was wrong, nor has Vector presented any evidence that would cause this Court to rethink its earlier determination that the *Portland Terminal* test can be adjudicated on a classwide basis; the training Vector recruits receive is highly standardized and Vector has not argued that the training has materially changed since this Court decided *Harris II*.  Thus, the Court adopts by reference its discussion of the *Portland Terminal* factors from its earlier *Harris II* decision.

spent in training.  Thus, even if Vector were correct that there is some variance among collective action members on the fourth *Portland Terminal* factor, the Court finds any such variance is not sufficient to defeat final FLSA certification here, where all of the other *Portland Terminal* factors can be efficiently adjudicated with common proof.

Second, Vector has not shown that any claimed variation with respect to whether an individual trainee provided Vector with a recruit list is in fact material to the ultimate outcome of the *Portland Terminal* analysis.  *See, e.g.*, *Reich v. Parker Fire Protection Dist.*, 992 F.2d 1023, 1026-27 (10th Cir. 1993) (explaining that the six factors of the *Portland Terminal* test are meant to be assessed in light of the "totality of the circumstances"); *Harris II*, 753 F. Supp. 2d at 1006 (following *Reich* and similar cases, and concluding that the *Portland Terminal* factors cannot be analyzed in isolation).  While it can be argued, as Plaintiffs do, that providing a recruit list "immediately advantages" Vector, recruits arguably provide an "immediate advantage" to Vector in other ways.  For instance, Vector does not dispute that all trainees who complete three days of training are asked to create customer lists and set up appointments with potential customers that are to take place soon after training is over.  *See, e.g.*, Saltzman Decl., Exs. 9 ("The reason I am calling is I just started a new job.  And as part of my training, I'm required to put on some initial appointments.").  The Court has yet to adjudicate whether that may be characterized as a commencement of the sales process, such that it might be deemed to provide an "immediate" advantage to Vector.

Third, it may be argued that the fourth *Portland Terminal* factor should be evaluated not on an individual recruit by recruit basis, but in the aggregate – *i.e.*, did Vector receive an "immediate advantage" from the recruit lists produced by trainers on the whole.  The Court notes the fourth factor references "the activit*ies* of the train*ees* – the plural not singular form.  Whatever the merits of these arguments, recruits share a common interest in pursuing these issues and hence in that regard are similarly situated.

Finally, perhaps the most important point is that any variance with respect to recruit lists can be easily managed (and adjudicated) at either trial or summary judgment because any variance as to this issue is simple and binary.  Either a collective action member provided a recruit list or not.

There is no grey area, and within each group (*i.e.*, those who provided lists and those who did not), it is clear that all trainees are "similarly situated."  Thus, Vector is free to argue in a summary judgment motion that it receives no "immediate advantage" from trainees who did not provide recruit lists.  Or the jury could decide, via special interrogatory, that trainees who provided recruit lists are Vector's employees, while those who did not are bona fide trainees.

Thus, the Court finds that the collective action members provisionally certified here have sufficiently similar legal claims (particularly in light of the case management tools available) to warrant final certification of a collective action under the FLSA.

C.   <u>The Court Will Not Resolve Statute of Limitations Questions at This Stage of Proceedings</u>

FLSA claims are typically governed by a two year statute of limitations, but Congress provided for a three-year limitations period if a Plaintiff can prove willful FLSA violations.  *See* 29 U.S.C. § 255(a).  Vector asks this Court to hold, as a matter of law, that Plaintiffs cannot prove "willful" violations of the FLSA, determine that the standard two-year limitations period under the FLSA consequently applies, and then decertify the claims of those collective action members whose lawsuits would be untimely under the FLSA's normal two-year statute of limitations period.[8]  The Court declines to do so at this juncture.

The only question currently before the Court is whether it should certify an FLSA collective action, or, more specifically, whether the claims and defenses of the parties are sufficiently similar to warrant collective treatment.  As noted above, the merits of this dispute are not currently at issue. Vector does not argue that Plaintiffs could prove willful violations as to some collective action members, but not as to others.  Rather, Vector acknowledges that whatever limitations period is

_____

[8]  Vector notes that the Court previously granted partial summary judgment in its favor, finding that Plaintiffs could not prove "willful" violations of either California Labor Code sections 203 and 226.  *See* Docket No. 164 at 3-8.  Under those Labor Code provisions, a failure to pay wages is only "willful" where the Defendant has no "good faith" argument that wages were not owed (*i.e.*, a violation is only willful where the Defendant cannot raise any defense to payment in good faith).  Plaintiffs correctly note that the standard of willfulness under the FLSA is different, and thus this Court's prior holding is not conclusive of Vector's current argument regarding "willful" violations of the FLSA.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988) (explaining that a plaintiff alleging a willful FLSA violation must show the defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA") (emphasis omitted).  Thus, it is theoretically possible for an employer to act in subjective good faith and yet display reckless disregard, although the line is thin.

United States District Court

For the Northern District of California

ultimately determined to apply here will apply uniformly across the class.  Thus, Vector's statute of limitations argument is not relevant to the issues currently before the Court, and is essentially premature.

Admittedly, Vector has cited three out-of-Circuit district court cases that suggest that a court *could* determine the appropriate statute of limitations at the final certification stage.  *See, e.g.*, *Stuven v. Texas de Brazil (Tampa) Corp.*, No. 12-cv-1283, 2013 WL 610651, at *6 (M.D. Fla. Feb. 19, 2013) ("[Defendant] may renew its objection to a three-year limitations period in a motion for decertification of the class, or a motion for summary judgment.").  While the Court does not conclusively hold that a limitations argument could never be successfully raised at the final certification stage, the Court believes such arguments are better addressed via summary judgment, where a fuller factual record may be developed.  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003); *see also O'Connor v. Uber Techs., Inc.*, -- F. Supp. 3d – , 2015 WL 1069092, at *10-12 (N.D. Cal. 2015).  Thus, the Court finds that it is far more appropriate to determine the "willfulness" issue at an adjudicating stage rather than at the certification stage, where the Court's task is far more circumscribed, and limited to determining simply whether an FLSA action should proceed on a collective basis.  *See Harris II*, 753 F. Supp. 2d at 1005 (rejecting Vector's merits arguments at the certification stage because "[w]hat the Court is being called upon to evaluate at this juncture is whether there is enough similarity between [Plaintiffs] and other putative collective action members such that the case should proceed as a collective action").

## IV.   STATE LAW CLASS ACTIONS

Plaintiffs also seek class certification under Rule 23 of the five state-law class actions (and one New York subclass) defined above.  Plaintiffs' certification bid is aided by the fact that Vector largely agrees that the majority of the Rule 23 requirements are met.  For instance, Vector does not contest that all of the Rule 23(a) requirements are satisfied with respect to Plaintiffs' Florida, Michigan, and New York proposed classes.  And Vector similarly concedes that Rule 23(a)'s commonality requirement is satisfied for all of Plaintiffs' proposed classes, as is Rule 23(b)(3)'s predominance test.

United States District Court
For the Northern District of California

That said, Vector does not agree that Plaintiffs' proposed classes should be certified here. Rather, Vector argues that: (1)  Plaintiffs Woods (California) and Varughese (Illinois) are not typical or adequate class representatives under Rule 23(a) because they did not provide Vector with recruit lists during their training with Vector; (2) the proposed state law class actions are not a superior method for adjudicating this controversy under Rule 23(b)(3) because aggrieved putative class members can (and should) pursue their rights through the FLSA collective action this Court has certified, rather than through Rule 23 class actions; and (3)  Plaintiffs' counsel are inadequate to represent the interests of the class under Rule 23(g) because they filed certain of Plaintiffs' private information on this Court's public docket without proper redactions, thereby creating a conflict between Plaintiffs and their proposed class counsel.  The Court disagrees, and rejects all of Vector's Rule 23 arguments.

However, the Court does agree with Vector on two points regarding the Plaintiffs' proposed class definitions.  First, the Court agrees with Vector that the classes, as currently defined, are "improper, as they appear to include within their scope anyone who currently lives in any of the five states at issue, even if they participated in an initial training seminar in a different state that is not at issue."  Docket No. 198 at 18 n.21.  The classes must be redefined slightly to require that the actual Vector training occurred in the state at issue; the fact that the trainee currently resides in one of the five states is not sufficient.[9]  And the Court also agrees with Vector that the California class must exclude those recruits who signed an arbitration agreement with Vector.  With those changes made, however, the Court finds that Rule 23 certification of the Plaintiffs' proposed class actions is appropriate.

A.    Legal Standard (Class Certification)

Although class actions have long been an integral part of the legal landscape and are sanctioned by Rule 23, the "class action is an exception to the usual rule that litigation is conducted

---

[9]  As currently defined the classes would include, for example, "[a]ll individuals *in California*, who, since January 16, 2010, through the date a final judgment is rendered, either (a) attended all three days of Vector's initial training program, or (b) attended some portion of Vector's training program and provided a list of individuals they thought might be interested in becoming sales representatives for Vector."  (emphasis added).

1    by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

2    2541, 2550 (2011).  "In order to justify departure from that rule, a class representative must be part

3    of the class and possess the same interest and suffer the same injury as [her fellow] class members."

4    *Id.* (internal quotation marks omitted).

5            Accordingly, before certifying a class, this Court "must conduct a 'rigorous analysis' to

6    determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v.*

7    *Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (citation omitted).  The Supreme

8    Court has made it clear that Rule 23 "does not set forth a mere pleading standard." *Comcast Corp.*

9    *v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  Rather, the party seeking certification must "affirmatively

10   demonstrate" her compliance with the requirements of both Rule 23(a) and 23(b).  *See Dukes*, 131 S.

11   Ct. at 2551.

12           Rule 23(a) of the Federal Rules of Civil Procedure permits Plaintiffs to sue as representatives

13   of a class only if:

14                   (1) the class is so numerous that joinder of all members is
                     impracticable;
15
                     (2) there are questions of law or fact common to the class;
16
                     (3) the claims or defenses of the representative parties are typical of
17                   the claims or defenses of the class; and

18                   (4) the representative parties will fairly and adequately protect the
                     interests of the class.
19

20   Fed. R. Civ. P. 23(a)(1)-(4).  The purpose of these Rule 23(a) requirements is largely to "ensure[]

21   that the named plaintiffs are appropriate representatives of the class whose claims they wish to

22   litigate," and to "effectively limit the class claims to those fairly encompassed by the named

23   plaintiff's claims." *Dukes*, 131 S. Ct. at 2550 (internal quotation marks and citations omitted).

24           If each of the Rule 23(a) requirements are satisfied, the purported class must also satisfy one

25   of the three prongs of Rule 23(b).  Here Plaintiffs seek certification under Rule 23(b)(3) which

26   provides:

27                   (3) the court finds that the questions of law or fact common to class
                     members predominate over any questions affecting only individual
28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The underlying merits of the case, while admittedly relevant at the class certification stage, should not overly cloud the Court's certification analysis – the only question presently before the Court is whether the requirements of Rule 23 are met.  *See Comcast Corp.*, 133 S. Ct. at 1432.  The fact that certain elements of proof may favor Vector on the merits does not negate class certification; the issue is whether the proof is amenable to class treatment.  Moreover, "[n]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule."  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).  Indeed, even "after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Ultimately, whether or not to certify a class is within the discretion of the Court.  *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013).

B.    Rule 23(a) Requirements Are Satisfied

As noted above, Vector does not dispute that *all* of the Rule 23(a) requirements are met with respect to Plaintiffs' proposed Florida, Michigan, and New York classes.  And Vector further agrees that the numerosity and commonality requirements are satisfied for each of Plaintiffs' proposed classes.  Because the parties are in agreement on these issues, the Court will not belabor its analysis of these points.  Rather, the Court will focus its attention on the typicality and adequacy arguments raised by Vector regarding the California and Illinois proposed classes.

1.    Numerosity

A plaintiff satisfies the numerosity requirement if  "the class is so large that joinder of all members is impracticable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (citation omitted).  While no court has set the precise number of class members that are needed to satisfy the numerosity requirement, there is general recognition that Rule 23(a)(1) is *at least* satisfied when the proposed class contains one hundred or more members.  *See, e.g.*, *Wang v. Chinese Daily News*, 231 F.R.D. 602, 607 (C.D. Cal. 2005) (recognizing there is a presumption of numerosity where the

United States District Court

For the Northern District of California

proposed class contains one hundred or more members), *reversed on other grounds by* 737 F.3d 538 (9th Cir. 2013); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1998) (finding a proposed class of forty members sufficient to satisfy numerosity).

Vector has indicated in its papers that there are at least 23,000 putative class members in California, 8,000 in Florida, 4,000 in Illinois, 3,000 in Michigan, and nearly 8,000 in New York. Docket No. 198 at 10.  The numerosity requirement is plainly satisfied.

2.   Commonality

In order to satisfy Rule 23(a)(2)'s commonality requirement, a plaintiff must "affirmatively demonstrate" that their claims depend upon at least one common contention the truth or falsity of which "will resolve an issue that is central to the validity" of each one of the class members' "claims in one stroke." *Dukes*, 131 S. Ct. at 2551.  That is, the lawsuit must call upon the court or jury to decide at least one factual or legal question that will generate a common answer "apt to drive the resolution of the litigation." *Id.*; *see also id.* at 2556 (holding that "even a single common question" will suffice to satisfy Rule 23(a)) (citation and internal modifications omitted).

The parties agree that the commonality requirement is satisfied here.  There is no dispute that *Portland Terminal* is the applicable test as to whether Vector's recruits are (or are not) its employees under the laws of each of the five states at issue.  There is similarly no dispute that Vector's liability will be conclusively resolved as to each class member by the application of *Portland Terminal*: Vector acknowledges it never paid any wages to its trainees, and thus if those trainees are determined to be Vector's employees under *Portland Terminal*, Vector's liability for minimum wage violations will be established.  As noted above, it is also undisputed that five of the *Portland Terminal* factors are susceptible to common proof.

Even with respect to the fourth *Portland Terminal* factor, where there arguably could be some variance between class members who did or did not provide recruit lists, the Court finds there are a number of questions common to all class members.  What constitutes an "immediate" advantage to the employer is a common issue for all class members.  For instance, the issue of whether providing or making customer lists provides an "immediate advantage" to Vector is a question common to all.  So is the question whether the fourth *Portland Terminal* factor should be

United States District Court

For the Northern District of California

1  measured in the aggregate or on an individual basis.  That individual class members may present

2  different facts as to whether they provided a recruit list, if anything, goes primarily to predominance,

3  and less so to commonality.  Thus, the commonality requirement is satisfied.  *See Harris II*, 753 F.

4  Supp. 2d at 1016-17 (finding commonality established under nearly identical facts).

5      3.    Typicality And Adequacy

6      Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be]

7  typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Representative claims are

8  "typical" if they are "reasonably co-extensive with those of absent class members; they need not be

9  substantially identical."  *Hanlon*, 150 F.3d at 1020.  Thus, the "test of typicality is whether other

10  members have the same or similar injury, whether the action is based on conduct which is not unique

11  to the named plaintiffs, and whether other class members have been injured by the same course of

12  conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Moreover, courts may

13  evaluate whether a named plaintiff is typical by determining whether she is "subject to unique

14  defenses which threaten to become the focus of the litigation."  *Id.* (citation omitted).  "Class

15  certification should not be granted if there is a danger that absent class members will suffer if their

16  representative is preoccupied with defenses unique to [her]."  *Id.* (internal modification and citation

17  omitted).

18      Rule 23(a)(4) imposes a closely related requirement to typicality – namely that the putative

19  class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

20  23(a)(4).  A named plaintiff satisfies the adequacy test if the individual has no conflicts of interest

21  with other class members and if the named plaintiff will prosecute the action vigorously on behalf of

22  the class.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  As other courts

23  and commentators have noted, the typicality and adequacy inquiries tend to significantly overlap.

24  *See, e.g.*, Newberg on Class Actions § 3:32 (5th ed. 2015) ("Due to the related nature of the two

25  requirements and the frequency with which they are challenged on the same grounds, many courts

26  address the typicality and adequacy requirements in a single inquiry.").  Because Vector's typicality

27  and adequacy arguments are overlapping here (Vector argues that Woods and Varughese are not

28

typical because they did not provide recruit lists, and argue that they are not adequate because their failure to provide recruit lists opens them up to unique defenses) the Court treats them together.

Before analyzing the typicality and adequacy of the proposed class representatives for the California and Illinois classes, the Court notes that Vector concedes that the typicality and adequacy requirements are met for the Florida, Michigan and New York classes. These proposed classes satisfy all of the Rule 23(a) requirements. Despite Vector's arguments to the contrary, all of the Rule 23(a) requirements are satisfied for the California and Illinois classes, including typicality and adequacy.

Vector claims that neither Woods (California) or Varughese (Illinois) are typical class representatives because neither individual provided Vector with a recruit list during training. As discussed above, Vector argues that this undermines typicality and adequacy under the fourth *Portland Terminal* factor, which asks whether the alleged employer derives immediate advantage from its trainees' activities. For largely the same reasons outlined above, the Court disagrees.

As the Ninth Circuit has repeatedly made clear, Rule 23(a) does not require that the claims of the class representatives and the putative class members be "substantially identical." *Hanlon*, 150 F.3d at 1020. Rather, the typicality and adequacy requirements simply require the representatives and putative class members to have suffered the same injury caused by "conduct which is not unique to the named plaintiffs." *Hanon*, 976 F.2d at 508. Notably, the Ninth Circuit has also consistently held that Rule 23(a)'s typicality and adequacy requirements present relatively "permissive standards" that do not pose a particularly high bar to class certification. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014); *see also In re NJOY, Inc. Consumer Class Action Litig.*, -- F. Supp. 3d. --, 2015 WL 4881091, at *27 (C.D. Cal. 2015) (acknowledging that the typicality requirement presents a "permissive standard"). That "permissive" test is satisfied here.

Vector cannot dispute that each named Plaintiff and putative class member suffered the exact same injury – each was denied wages for the time they spent in training. And Vector similarly cannot dispute that each named Plaintiff and every putative class member were subject to the same uniform policies and practices during training. Each underwent substantially similar training, and each were asked to provide Vector with the names of potential recruits. The fact that Woods and

Varughese did not ultimately provide Vector with any recruit names does not make their claims so dissimilar from those of their fellow class members to defeat typicality or adequacy.  Indeed, as noted above, Vector acknowledges that five of the six *Portland Terminal* will be subject to the same analysis for all class members – a concession that is essentially dispositive of the Rule 23(a) requirements.  And even with respect to the fourth *Portland Terminal* factor, Plaintiffs persuasively argue that trainees' provision of recruit lists to Vector is only *one* possible mechanism by which Plaintiffs will contend that Vector received an "immediate advantage" from its trainees so as to satisfy *Portland Terminal*.  In addition to recruit lists, Vector does not dispute that trainees were uniformly asked to create customer lists and to schedule sales appointments with potential customers.[10]  Put simply, Woods' and Varguhese's claims are largely identical to those of their fellow class members, and the one possible difference is not so obviously material to the *Portland Terminal* six-factor test to defeat typicality or adequacy.  The named class representatives have an incentive to litigate on behalf of all recruits regardless of whether any particular individual provided a recruit list; there is no conflict of interest.  Furthermore, any variance is easily managed and adjudicated at later stages of this case.  For instance, a fact-finder could take into account any variance (and could determine the materiality of any such variance) vis-a-vis recruit lists using a special verdict form.  That is, the fact finder could take into account the variation among recruits as to the fourth *Portland Terminal* factor and reach conclusions particular to each group.  Thus, the Court finds that the Rule 23(a) factors are satisfied for all of Plaintiffs' proposed classes.

C.   The Rule 23(b)(3) Requirements Are Satisfied

Because Plaintiffs' proposed class claims satisfy the requirements of Rule 23(a), this Court must next consider whether the claims satisfy one of the three prongs of Rule 23(b).  Here, Plaintiffs have moved for class certification pursuant to Rule 23(b)(3), which provides that the Court must find

---

[10]  Vector does not dispute that its recruits received training regarding Vector's specific products, which training could theoretically advantage Vector by providing the firm with recruits that can quickly sell larger quantities of Vector products.  Vector does dispute that its training program was, in the words of the Plaintiffs, "Cutco-centric," and further disputes that it received an "immediate advantage" from this aspect of its training.  This is a merits argument, however, that the Court does not currently reach.  Nor, contrary to Vector's papers, is it one that the Court previously ruled on at summary judgment.  *See* Docket No. 115 at 40:11-43:7.  What is important here is that this argument can be resolved on a classwide basis using common proof.

1    "that the questions of law or fact common to class members predominate over any questions

2    affecting only individual members, and that a class action is superior to other available methods for

3    fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  That is, the Court

4    must find that common questions predominate over individualized issues, and that proceeding as a

5    class action is superior to other forms of adjudication.

6         As noted above, Vector concedes that the predominance requirement is satisfied here.  Each

7    state law class action will be resolved by applying the *Portland Terminal* test, and there is no dispute

8    that the *Portland Terminal* test can for the most part be adjudicated on a uniform basis using

9    classwide (and common) proof.  Variation as the fourth factor can be handled via case and trial

10   management.  Thus, this element of the Rule 23(b)(3) test is satisfied.

11        Vector argues, however, that the test for superiority is not met here because an FLSA

12   collective action is a vastly superior method for Vector's trainees to prosecute their wage and hour

13   claims.  The Court previously rejected many of Vector's similar superiority arguments in *Harris II*,

14   and it rejects them once again here.

15        With respect to the Court's "superiority" analysis, the Federal Rules suggest that the Court

16   should consider:

17         (A) the class members' interests in individually controlling the
            prosecution or defense of separate actions;
18
            (B) the extent and nature of any litigation concerning the controversy
19          already begun by or against class members;

20         (C) the desirability or undesirability of concentrating the litigation of
            the claims in the particular forum; and
21
            (D) the likely difficulties in managing a class action.
22

23   Fed R. Civ. P. 23(b)(3)(A)-(D).  Despite Vector's arguments to the contrary, each of these factors

24   weighs heavily in favor of class certification here.

25        1.    <u>Class Members' Interests in Individually Controlling the Prosecution or Defense of</u>

26             <u>Separate Actions</u>

27        Vector argues that Plaintiffs here have "individual interests in controlling the prosecution of

28   any claims they may have against Vector," but Vector is mistaken.  As the Supreme Court and

United States District Court

For the Northern District of California

numerous panels of the Ninth Circuit have recognized, the first superiority factor largely turns on the amount of damages at stake in any individual lawsuit.  As Justice Ginsburg explained, an individual's interest in individually controlling the prosecution of a lawsuit is likely "no more than theoretic where the individual stake is so small as to make a separate action impracticable." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616 (1997) (citation omitted); *see also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.") (citation omitted).  Thus, the first superiority factor only weighs against class certification where individual damages "run high" such that individual class members have a strong interest "in making individual decisions on whether and when to settle." *Amchem Prods.*, 521 U.S. at 616-17.  Vector has not, and cannot, argue that the individual damages in this case run sufficiently high to tilt this superiority factor in favor of the prosecution of thousands of individual lawsuits for recovery of minimum wages.  Vector acknowledges that its trainees spend roughly 15 hours in training over the course of three days. *See, e.g.*, Humphrey Decl., Ex. D. at 126:25-127:6.  Thus class members' claims for minimum wages are individually worth a few hundred dollars at best.  "[T]he amounts at stake for individuals" here are "so small that separate suits would be impracticable." *Amchem Prods.*, 521 U.S. at 616.  Thus the first superiority factor is satisfied.

Vector argues otherwise, and suggests that the Court should infer that the large majority of putative class members have an individual interest in prosecuting their own lawsuits against Vector because nearly 96% of putative class members failed to opt-in to the FLSA collective action.  The Court rejects this argument because it is predicated on a fundamentally flawed premise – that a putative class member's failure to specifically opt-in to an FLSA collective action shows that the class member has a significant interest in controlling his or her own individual lawsuit against Vector.  As this Court held previously in *Harris II*, "a Sales Representative's decision not to opt-in to the FLSA claim is not necessarily an indication that he or she does not want to participate in a lawsuit involving different substantive claims," 753 F. Supp. 2d at 1018, nor does it indicate that the reason the individual failed to opt-in is because he or she would rather hire their own attorney, file their own complaint, engage in discovery, motions practice, and possibly trial, in order to obtain a

few hundred dollars in damages from Vector.  Vector has presented no evidence that any class members would prefer to control and litigate an individual action for such a small potential damages award.  Thus, the first superiority factor reveals that class treatment is superior.

> 2. The Extent and Nature of Any Litigation Concerning the Controversy Already Begun by or Against Class Members

Vector argues that the second superiority factor is not met here because the FLSA action being prosecuted collectively on behalf of certain class members is the far superior method of adjudicating these claims.  The Court roundly rejected this exact same argument in *Harris II*, and it is no more persuasive here.

According to Vector, this Court should find that "an opt-in procedure under the FLSA [is] superior to an opt-out Rule 23 class action where putative class members demonstrate[] hostility towards [the Rule 23 action] and a lack of interest in pursuing the litigation."  Docket No. 198 at 14 (citing *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462 (N.D. Cal. 2004) and *McDonald v. Ricardo's on the Beach, Inc.*, No. 11-cv-9366, 2013 WL 228334 (C.D. Cal. Jan 22, 2013)).  Vector's argument is flawed in a number of respects.  First, Vector has not shown that putative class members here have "demonstrated hostility" towards the proposed class actions.  Vector has submitted just seventeen declarations from putative class members indicating that they do not want to participate in any class action against Vector.  *See* Docket No. 198 at 13 n.16.  The views of these 17 individuals have no probative value, however, where Vector admits[11] that the five putative classes here may well have over 45,000 members.  *See Harris II*, 753 F. Supp. 2d at 1018 (rejecting argument that Vector had shown "significant hostility with respect to the class on the whole, which numbers over 40,000 people," where Vector submitted only "fifty plus declarations" from putative class members who opposed the action); *see also O'Connor v. Uber Techs., Inc.*, No. 13-cv-3826-EMC, 2015 WL 5138097, at *12 (N.D. Cal. Sept. 1, 2015) (holding that 400 declarations submitted by Defendant that arguably showed hostility to the lawsuit had "little probative value to the question" of class certification where the proposed class included 160,000 members).

---

[11] *See* Docket No. 198 at 10.

United States District Court

For the Northern District of California

Nor is the Court convinced that because "only 4,500 individuals" affirmatively chose to join the FLSA collective action against Vector, the Court can conclude that the remaining individuals who did not opt-in have somehow manifested their hostility to the Plaintiffs' lawsuit.  As this Court has previously recognized, "'there may be a number of reasons the employees failed to opt-in to the action'" that have nothing to do with a belief that the lawsuit is a bad idea or a "'belief they were not actually aggrieved.'"  *Harris II*, 753 F. Supp. 2d at 1018 (quoting *Cortez v. Nebraska Beef, Ltd.*, 266 F.R.D. 275, 294 (D. Neb. 2010)).  Indeed, the most likely reason the FLSA opt-in rate was relatively low – around 4% here – was "inadvertence, as opposed to a conscious decision not to participate," especially where any potential individual damages award obtained through the FLSA action will be fairly small, as here.  *See Harris II*, 753 F. Supp. 2d at 1018; *see also* Samuel Issacharoff and Geoffrey P. Miller, *Will Aggregate Litigation Come to Europe?*, 62 Vand. L. Rev. 179, 202-08 (2009) (discussing variables that negatively impact opt-in participation rates, such as when "the size of per capita recovery" is relatively low).  Put simply, neither *Leuthold* or *McDonald* apply here, as Vector suggests, because there is no evidenced hostility to the Rule 23 actions.

Moreover, this Court has previously "decline[d] to follow *Leuthold*" and similar decisions (like *McDonald*) that found superiority defeated by the presence of a parallel FLSA collective action, because the Court determined that such decisions are not persuasively reasoned.  *See Harris II*, 753 F. Supp. 2d at 1018-19.[12]  *Leuthold* and its progeny would essentially prohibit the simultaneous pursuit of plaintiffs' rights under both the FLSA and state wage and hour laws, despite the fact that there is no dispute that the FLSA does not preempt state employment laws, and there is similarly no dispute that a plaintiff is entitled to recover under both the FLSA and state law if she can successfully prove her claims under the relevant statutes.  As this Court previously explained:

> [I]f the Court were to require this case to be prosecuted solely under the FLSA, it would in practical terms have a preemptive effect on the state law claims . . . .  To the extent Vector disputes this effect on the ground that the state law claims are still substantively preserved, only

---

[12]  This Court is not alone in declining to follow *Leuthold*.  *See, e.g.*, *Thorpe v. Abbott Labs., Inc.*, 534 F> Supp. 2d 1120, 1123-24 (N.D. Cal. 2008); *Murillo v. Pac. Gas & Electric. Co.*, 266 F.R.D. 468, 472 (E.D. Cal. 2010); *Lindsay v. Government Employees Ins. Co.*, 251 F.R.D. 51, 57 (D.D.C. 2008) (refusing to follow *Leuthold* and indicating that the decision is "contrary to the weight of authority").

1  |  procedurally altered, it ignores the fact that the procedural difference
2  |  between the FLSA and Rule 23 is significant.  Given the likely difference in class sizes between an opt-in FLSA class and an opt-out Rule 23 class, the rights of the class as a whole to prosecute the state
3  |  claims would be substantially diminished were Rule 23 class certification denied as a result of FLSA certification.  The likely
4  |  practical effect of denial of Rule 23 certification is that the state wage claims . . . will be dropped.
5  |
6  |  *Harris II*, 753 F. Supp. 2d at 1018 (citation omitted).

7  This Court's *Harris II* decision advanced additional reasons why an FLSA collective action

8  is not necessarily superior to a Rule 23 class action, and certainly not so superior as to effectively

9  prohibit (or preempt) parallel state wage actions:

> [W]ere FLSA certification to bar Rule 23 certification of state claims, claimants with rights under both the FLSA and state law would be faced with a trilemma.  They must either:  (1) forego their FLSA claims altogether in contravention of the remedial purposes of the FLSA; (2) forego their state wage claims in violation of the spirit of the savings claims of the FLSA, *see* 29 U.S.C. § 218(a) (permitting states and municipalities to enact stricter wage and hour laws); or (3) split their claims and prosecute their state claims via class action in state courts while maintaining their FLSA claims in federal court, resulting in a multiplicity of actions.  It is highly doubtful that Congress in establishing the FLSA certification procedure would have intended such perverse consequences.

17  *Id.*  Finally, the Court rejected Vector's superiority argument vis-a-vis FLSA collective actions

18  because:

> [A] paradoxical result would obtain if the Court were to deny Rule 23 certification simply because of the existing FLSA claim.  Plaintiffs bringing *only* state claims under Rule 23 would be afforded greater rights than those who bring both state claims *and* FLSA claims.  That paradox cannot be fully rationalized by the contention that those employees who fail to opt-in under FLSA have indicated their conscious refusal to participate in a Rule 23 class action.

23  *Id.*

24  Vector has made no arguments here that would convince the undersigned to reverse course,

25  and find that Rule 23 certification of state law wage claims *should* be denied merely because some

26  putative class members can pursue entirely *different* wage claims by way of an FLSA collective

27  action.  The second superiority factor weighs in favor of class certification here.

28

United States District Court

For the Northern District of California

3.    <u>The Desirability or Undesirability of Concentrating Litigation of the Claims in the Particular Forum</u>

Vector argues that the third superiority test is not met because of the pending FLSA collective action.  For the reasons explained above, Vector's arguments are without merit.  Moreover, it is clearly desirable to litigate Plaintiffs' state law causes of action via Rule 23 class actions in this forum.  It is far more efficient for the judiciary as a whole, as well as both Plaintiffs and Vector, to litigate Plaintiffs' wage and hour claims in one action, as opposed to in several thousand individual actions filed across the country.  Moreover, this Court's extensive knowledge of this case and the parties – gained not just through overseeing this litigation, but through overseeing *Harris* – counsels in favor of class certification here.

4.    <u>The Likely Difficulties in Managing a Class Action</u>

Vector argues that the proposed Rule 23 class actions will not be manageable because putative class members will be confused by receiving both opt-in (FLSA) and opt-out (Rule 23) notices.  Vector raised this precise argument in *Harris*, and it remains unpersuasive.  While manageability could potentially be a "concern where there is both an opt-in and an opt-out procedure and an attendant risk that class notices might be perceived as contradictory, the confusion can be dealt with by a carefully worded Rule 23 class notice.  The fact that the FLSA class notice has already issued in the instant case will substantially lessen the confusion."  *Harris II*, 753 F. Supp. 2d at 1019.

The Court foresees no other manageability problems here.  As noted above, Vector's substantive liability will turn on the application of the *Portland Terminal* test, which can be adjudicated using common proof for all class members.  Further, to extent that some class members did not provide recruit lists to Vector during training, the Court can manage any such variation in proof through the use of a special verdict form or other standard trial management techniques, as indicated above.  Consequently, the Court concludes that fourth and final superiority factor is satisfied.

**United States District Court**
For the Northern District of California

1    Because all of the superiority factors are met, the predominance requirement is met, and all

2   of the Rule 23(a) factors are met, the Court concludes that certification of Plaintiffs' proposed

3   classes appropriate here.

4   D.    Plaintiffs' Proposed Class Definitions Need to Be Modified

5    Above, the Court determined that class certification is appropriate under Rule 23.  However,

6   the Court agrees with Vector that the definitions of the precise classes to be certified need to be

7   modified slightly.  First, the definitions need to be modified to accurately reflect that only

8   individuals who *received* training in the state at issue can be members of the class.  As currently

9   drafted, an individual who attended training in Nevada, but later moved to California, could possibly

10   be a member of the California class.  *See, e.g.*, Class Cert. Mot. at 5 (defining California class to

11   include: "All individuals *in* California" who otherwise qualify to be class members) (emphasis

12   added).  However, a trainee who attended training in another state would be protected by the labor

13   laws in the state where training occurred, not the laws of the state where they later happen to reside.

14   *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2014) (holding that a presumption exists

15   against the extraterritorial application of state law); *see also O'Connor v. Uber Techs., Inc.*, 58 F.

16   Supp. 3d 989, 1003-07 (N.D. Cal. 2014).  Thus, Plaintiffs shall file revised class definitions to the

17   Court within five (5) days of the date of this Order which clearly indicate that only individuals who

18   received training in a relevant state will be class members under that state's laws.

19    The Court is also convinced that the California class definition must exclude those trainees

20   who signed an arbitration agreement.  Plaintiffs acknowledge as much with respect to their proposed

21   Florida, Illinois, Michigan, and New York classes – each of these proposed class definitions

22   expressly exclude those individuals "who signed a sales representative agreement with an arbitration

23   clause."  *See* Class Cert. Mot. at 5-6.  Plaintiffs argue a different result is required in California,

24   however, because the Vector arbitration agreement provides that it does not apply to "claims which

25   are excluded from arbitration by *applicable* state or federal law," and California Labor Code section

26   229 provides that Plaintiffs' wage and hour claims asserted here "may be maintained without regard

27   to the existence of any private agreement to arbitrate."  Cal. Lab. Code § 229 ("Actions to enforce

28   the provisions of this article for the collection of due and unpaid wages claimed by an individual

30

United States District Court

For the Northern District of California

1   may be maintained without regard to the existence of any private agreement to arbitrate.").

2   Plaintiffs' argument fails because the United States Supreme Court held in 1987 that California

3   Labor Code section 229 is expressly preempted by the Federal Arbitration Act.  *See Perry v.*

4   *Thomas*, 482 U.S. 483, 492 (1987) (holding that "§ 2 of the Federal Arbitration Act preempts § 229

5   of the California Labor Code").  A code nullified by the Supreme Court is not, in normal parlance,

6   "applicable."

7         As a number of courts have previously recognized, a state law is not generally thought

8   "applicable" where it has been preempted.  *See Flagg v. Yonkers Savings and Loan Ass'n, FA*, 396

9   F.3d 178, 186 (2d Cir. 2005); *Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 99 (D. Mass. 2012);

10   *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 160 (E.D.N.Y. 2009).  As the Court in

11   *McAnaney* correctly explained, where a contract incorporates all "applicable" laws, the contract

12   "only require[s] compliance to the extent that such laws are *applicable*."  *McAnaney*, 665 F. Supp.

13   2d at 160.  "State laws that are subject to preemption . . . are manifestly *not applicable* . . . and not

14   specifically incorporated into defendants' agreements."  *Id.* (emphasis in original).  Plaintiffs have

15   cited no case to the contrary, and thus Plaintiffs argument is rejected.  That is not to say that parties

16   could not contract in such a way that pre-empted laws *could* apply to their disputes.  But the terms of

17   Vector's arbitration agreement – which provides an exception to arbitration only where required

18   under "applicable" law – does not clearly mandate such a result.  *Cf. Roling v. E\*Trade Securities*

19   *LLC*, 860 F. Supp. 2d 1035, 1041-42 (N.D. Cal. 2012) (explaining that terms can be incorporated by

20   reference into an agreement under California law, but only where the incorporation is "clear and

21   unequivocal").  Rather, the plain and ordinary meaning of Vector's contract excludes preempted (or

22   otherwise invalidated laws, such as those that have been repealed or deemed unconstitutional) from

23   the scope of the agreement.  Plaintiffs' arguments to the contrary are unpersuasive.

24   E.      Plaintiffs Counsel Are Appointed Class Counsel

25         Federal Rule of Civil Procedure 23(g) mandates that if this Court certifies a class it "must

26   appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  In making this appointment, the Court must

27   principally evaluate the adequacy of class counsel to fairly represent the interests of the class, *see*

28   Fed. R. Civ. P. 23(g)(4), which requires the Court to consider such factors as the work counsel has

31

United States District Court

For the Northern District of California

done to-date in the action, her experience handling class actions and other complex litigation, her knowledge of the applicable law, and the resources counsel will bring to bear in prosecuting the action.  *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Here, the Court is convinced that Plaintiffs' current attorneys are more than adequate to fairly and vigorously represent the interests of the class.  Indeed, the Court previously appointed these same attorneys as class counsel in the *Harris* matter, which they successfully prosecuted to completion, obtaining an excellent class settlement.  *See Harris II*, 753 F. Supp. 2d at 1016 (discussing putative class counsel's extensive experience prosecuting employment-related class actions).  The Court is very familiar with the work of the Plaintiffs' attorneys here, and has no doubt they will adequately serve the interests of the absent class members here.

Vector argues otherwise, and claims that there is a conflict between the Plaintiffs' attorneys and their clients here because certain named Plaintiffs have "potential legal claim[s] against their counsel for improperly filing their private information in the public record."  Docket No. 198 at 21. Specifically, Vector contends that the Plaintiffs' attorneys here mistakenly "published their clients' Social Security Numbers and birth dates in publicly-filed Court documents, in violation of the fiduciary duty of care they owed their clients, in flagrant[13] disregard of the Federal Rules of Civil Procedure (Rule 5.2(a)), and in defiance of the ECF redaction rules" that attorneys of this Court must comply with.  In their reply brief, Plaintiffs' attorneys candidly admit that they mistakenly filed some private information on the public docket, but note that the mistake has now been rectified and that they have "implemented additional protocols as a direct result of this case" to make sure such mistakes are not repeated.  The Court does not believe that such mistakes rise to the level of a "conflict" between Plaintiffs and their attorneys, nor does the Court believe that counsel's honest mistakes are so grave that they would be inadequate to serve the interests of the class here.  Vector's arguments to the contrary are rejected.

---

[13]  The Court observes that both sides papers' employ a heavy dose of over-the-top rhetoric and, frankly, name calling.  Such language is not helpful to the Court, and reflects poorly on the individual lawyers who use it, as well as the profession as a whole.

## V.   <u>CONCLUSION</u>

The Court concludes that Plaintiffs are similarly situated to the opt-in class members such that final certification of an FLSA collective action is appropriate.  The Court also concludes that the Plaintiffs' proposed state class actions meet the requirements of Rule 23(a) and (b).  However, the Plaintiffs' class definitions must be revised as indicated above.  Plaintiffs shall submit revised definitions consistent with this order within five (5) days.

This order disposes of Docket Nos. 178 and 192.


IT IS SO ORDERED.


Dated:  September 4, 2015

_____
EDWARD M. CHEN
United States District Judge